The TRAVELERS INSURANCE COM-
PANY, Appellant,

v.

Charles Cecil MILLER, Appellee.

No. 5684.

Court of Civil Appeals of Texas.

El Paso.

April 28, 1965.

Rehearing Denied May 19, 1965.

Kerr, Fitz-Gerald & Kerr, Ted M. Kerr, Midland, for appellant.

W. R. Barnes, Odessa, for appellee.

PRESLAR, Justice.

This is an appeal from a judgment awarding maximum benefits under the Workmen's Compensation Law of this State for total and permanent disability to appellee, Charles Cecil Miller, based on jury findings in response to special issues. The disability was found to result from an occupational disease caused by poisoning by petroleum products —gas or fumes causing chronic bronchitis.

Appellee worked as a roustabout for Basin Contracting Company from 1955 until April 24, 1962, when he quit because of his health, and has not worked since. He testified that in such employment he worked at connecting up tank batteries, laying flow lines, tying in wells, and on some occasions cleaning out tanks. All of such work was

in connection with the production of petroleum products, and it was his testimony that he was exposed to gases all the time that he was doing such work; that it was worse at some times than others, and that the worst exposure was when working inside tanks to clean them. Appellee had done such oilfield work most of his life and, at the time of trial, was a man 58 years of age and his working hours with Basin Contracting Company were 7:00 to 5:00, six days a week. He testified that he began to have trouble with his breathing in 1959, spent eight days in the hospital with pneumonia, and lost two or three weeks' work at that time. He further testified that he continued to get worse, would "choke up" and could not breathe, vomited at times, but worked steadily until he quit work on April 24, 1962, and has gone steadily downhill since that time.

By its answers to special issues the jury found that (1), appellee sustained an occupational disease by reason of poisoning by petroleum products; (2) while employed by Basin; (3) resulting in total disability; (4) produced by the disease; (5) beginning on April 24, 1962; and (6) permanent. The jury also found that, (13), disability began within one year of the last injurious exposure to "such occupational disease"; (14), that such disease was due to the nature of an employment in which the hazards of such disease actually exists; was (15) characteristic of and (16) peculiar to such employment; and, (21), that Basin had notice of such disease within thirty days of the first distinct manifestation of same.

■ Special Issue No. 21 inquired if "Basin Contracting Company, Inc., had notice of Plaintiff's occupational disease, if any, within thirty days after the first distinct manifestation of same?" The jury answered "It did", and appellant questions the sufficiency of the evidence to sustain such finding, and also objected to the form of the issue and requested the court to submit it in a form inquiring whether plaintiff "gave notice" etc. We think the issue

was correct as submitted. It was asked to meet the requirements of Art. 8307, sec. 4a, T.R.C.S., and the pertinent part of that Article reads:

"Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening of an injury or the first distinct manifestation of an occupational disease * * *."

It is readily noted that the statute does not specify that the claimant himself must give the notice. Its requirement is that there shall be, in fact, notice, actual or given, not who must give notice. The burden is on the claimant to establish the existence of such notice, and the inquiry as to whether his employers "had notice" fairly posed the question and placed the burden as to the fact to be determined.

■ Appellant makes the dual assertion that there is no evidence to support this finding, or that the evidence is insufficient to support it. When such dual assignment is made, we must first dispose of the "no evidence" contention by looking only to the evidence favorable to such finding. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660. This is a question of law as distinguished from a question of fact, and thus its determination requires either affirmance or rendition, rather than remand for a new trial. Being a question of law, it is reviewable by the Supreme Court. A determination of the question of the sufficiency of the evidence is said to be a fact question in which courts of civil appeals are final, and such a determination calls for either affirmance or remand for new trial—never rendition—and it is determined by looking to all of the evidence to see if it is factually too weak to support the finding made by the jury. In the case before us, the plaintiff, his wife, and his doctor were the only witnesses (defendant rested at the conclu-

sion of plaintiff's evidence-in-chief), and all of the evidence in the record on the issue involved is as follows:

Plaintiff testified on direct examination:

"Q Did you ever tell Mr. Charlie Rogers about any of your problems?

"A Oh, I told him a few.

"Q Was he ever around you when you would get sick out there when you were working, when you got sick at your stomach?

"A Well, I don't know.

"Q Did you ever tell him anything about gas making you sick?

"A Yeah.

"Q And when did you tell him that, please, sir?

"A Oh, I don't—I can't recall the date.

"Q Well, tell us this, did you tell him that after you quit working out there, April 24, 1962?

"A We discussed it, yes, sir.

"Q Where abouts were you when you discussed it?

"A My house.

\*      \*      \*      \*      \*      \*

"Q Can you tell us whether or not Mr. Rogers came by to see you after you started staying home sick after April 24, 1962?

"A Mr. Rogers has been by several times to see me.

"Q Did he come back by pretty soon after you started staying home?

"A Well, I can't just recall how long but it wasn't too long.

"Q About how long was it after you started staying home sick that he came by to see you, your best recollection?

"A Oh, I don't know, I figure three or four weeks, somewhere along there.

"Q At that time will you tell us whether or not you had any discussion about the gas making you sick?

"A He just come by to see how I was feeling and wanted to know when I would be able to go back to work.

"Q Did you tell him at that time that the gas was making you sick?

"A I don't recall whether I did or not."

On cross examination plaintiff then testified further:

"Q Now you stated awhile ago, I believe, that you did not recall what you told Mr. Rogers when he came to visit you whenever that time was?

"A That's right.

"Q And do you recall whether or not you ever told him that you were having poison trouble from gas?

"A I can't recall whether I did or not.

"Q And did you ever tell anybody with Basin before this lawsuit was started that you had trouble with gas and with poison by gas?

"A No, sir.

"Q You answered 'no'?

"A No, sir.

"Q Your answer is 'no'? Or will you read the question back, please?

"COURT REPORTER: (Reading—Q. And did you ever tell anybody with Basin before this lawsuit was started that you had

trouble with gas and with poison by gas?)

"A  No.

"Q  And you never reported this, that you were claiming that you had been poisoned by gas, is that correct?

"A  I didn't, no sir."

Plaintiff's wife was asked on direct examination whether there was any discussion of gas making Mr. Miller sick at the time of Mr. Rogers' visit to their home "two or three weeks or something like that after he quit work April of 1962", and she answered that it was discussed. On cross examination she then testified that she could not remember when this discussion took place, that she did not believe that it was over five or six weeks after his quitting work, but that she did not know whether it was before or after his first visit to his doctor for this illness, which was June 18, 1962.

■ Charlie Rogers was a foreman with Basin. Notice to him would be notice to Basin. Texas Employers' Insurance Ass'n v. Walker, Tex.Civ.App., 298 S.W. 2d 643; Associated Employers Insurance Co. v. Burris, Tex.Civ.App., 321 S.W.2d 112. The 30-day notice period begins to run from the time of the "first distinct manifestation" of the disease. "First distinct manifestation" was not defined by the court, and has never been defined by any Texas court in the reported cases. It is for the jury to determine under the facts peculiar to each case as to when the disease reached the stage where it manifested itself so that claimant knew, or should have known, that he had an occupational disease. Some jurisdictions start the time running when disability occurs, others when diagnosis is made, and such other fixed times; but our legislature has seen fit to provide a more flexible standard. We see no error in not defining the formula in the charge, for the word "distinct" means clear, well defined; and the word "manifest" means evident to the senses. Webster's New International Dictionary, 2 ed., unabridged. A distinct manifestation of an occupational disease, therefore, denotes that its existence is clearly evident. It should be clear to the claimant before the loss of his right to compensation is denied for failure by him, or someone in his behalf, to take positive action within the period of time prescribed. We think that the statute means that the manifestation must be distinct to the claimant, reasonably sufficient to cause him to believe that he has an occupational disease. In the case before us, *when* this happened has lost much of its importance, because of the weakness of the evidence as to when notice was given. The nature of the disease, together with appellee's history of respiratory ailments, leads to the conclusion that he could not be charged with belief that he had the disease earlier than the date he quit work. Compensation is not provided for pain and suffering, but for loss of wages, and there would be no necessity for giving notice so long as he continued to work. The more plausible date to charge appellee with knowledge of his disease would be when he decided to see a doctor, June 18, 1962. Even then there is some doubt that the doctor knew at that first examination that an occupational disease was involved, or that he so informed appellee at that time. The doctor described the disease as being in an advanced stage when he first saw appellee; that it had been building up to that stage over a period of some two and one-half years through recurrent exposure to petroleum products (gases) which destroyed the mucous membrane and cilia so that appellee was unable to cough, poor drainage was promoted, and chronic inflammation in the bronchial tubes resulted.

■ Viewing only the evidence which is favorable to the jury finding, it cannot be said that there is no evidence to support it. We therefore overrule appellant's contention as to "no evidence"; but we agree with appellant that the evidence is insufficient, for when all the evidence is considered, we

are of the opinion that it is factually too weak. The testimony offered in support of the fact of "notice" on direct examination is vague and indefinite and, at times, unresponsive, so that the answers given amount only to an inference as to the facts inquired about. In order to prevail in his lawsuit, plaintiff had to prove that the Association or subscriber (his employer, Basin) had notice; yet he testified unequivocally (under circumstances which do not indicate that he was confused) that he did not tell anybody connected with Basin, before the lawsuit was started, that he had trouble with gas and with poison by gas. In short, our holding is that while there is some evidence of probative force when that favorable is considered alone, yet when all the evidence is considered, it is so uncertain and inconsistent as to be insufficient to support the issue and the consequent judgment. Appellant's first point of error is therefore sustained, as to the evidence being insufficient to support the jury finding that appellant had notice of his claim of occupational disease within thirty days of the first distinct manifestation of the same.

Appellant's tenth point of error is also sustained as to the form of the issue as submitted. The issue inquired whether disability resulted within one year after plaintiff's last injurious exposure to such "occupational disease". The issue followed the wording of Section 25 of Article 8306, T.R.C.S., which provides:

> "The Association shall not be liable for any compensation for an occupational disease * * * unless incapacity or death results within * * * one (1) year in case of any other occupational disease, after the last injurious exposure to such disease in such employment * * *."

Elsewhere, Article 8306 speaks of injurious exposure to the "hazards" of such disease, and it would appear that the reasonable construction to be given Section 25 is that it, too, was intended to mean the hazards or causes of the disease, rather than the dis-ease itself. As appellant points out, the issue is meaningless as submitted, for one having a disease would be constantly exposed to it. We think that the ultimate fact to be determined is whether the incapacity occurred within one year after exposure to that which caused it.

All other points of error have been considered, and all are overruled. The judgment of the trial court is, for the reasons above given, reversed, and the cause remanded for re-trial.