**HARTFORD ACCIDENT AND INDEMNI-TY COMPANY, Appellant,**

**v.**

**Elma Ira McFARLAND, Appellee.**

**No. 388.**

Court of Civil Appeals of Texas.

Tyler.

Oct. 17, 1968.

Rehearing Denied Nov. 14, 1968.

Kenley, Boyland, Hawthorn & Starr, Jason W. Smith, Longview, for appellant.

Douglas Weitzel, Longview, for appellee.

SELLERS, Justice.

This is a compensation case brought by appellee, Elma Ira McFarland to recover for an accidental injury received by him

while working for the City of Kilgore, the appellant Hartford Accident & Indemnity Company being the insurance carrier of the City.

The case was tried to a jury and upon the jury's findings resulted in a judgment for appellee in the sum of $11,112.90. From this judgment, the appellant has duly prosecuted this appeal and by proper assignments of error challenges the judgment of the trial court and the jury's findings as being without support in the evidence and as being against the great weight and preponderance of the evidence.

The only evidence of an accidental injury in the record is that of the appellee and his doctor. The alleged accidental injury was on January 7, 1965. Appellee testified that on this date, while working for the City of Kilgore, he became sick and went home and had his wife make an appointment with a doctor for him. The doctor who examined and treated appellee was Dr. Hunt who testified on the trial.

Appellee testified that he had worked for the City of Kilgore about twelve years immediately before the 7th day of January, 1965; that when he went to work for the City, he was placed on a truck with three other men and their duties were to spray insecticide with hand pumps to kill mosquitos and flies; that they mixed their own poisons and carried them on the truck, and would fill their hand sprays and go about spraying different places where the poisons were needed; that he remained on this truck for one year and then was transferred to a pick-up truck with one other man, where he remained most of the time doing the same character of work although in the winter, he would work on the garbage truck and had also caught stray dogs for the City. He testified to the poison contents of the sprays and that they used gloves and gas masks at least part of the time while spraying. His testimony is to the effect that during the twelve years that he worked for the City, his main job was to work with the poisonous insecticides. He

testified that he got sick on Thursday and that he worked all day the three days previous as well as the week before. However, he does not say what kind of work that he was doing at that time. Appellee also testified that he had suffered spells while working for the City as far back as 1962; that he had some character of heart trouble all of his life and had his thyroid gland removed before he started to work for the City; however, he took a physical examination and passed the same before he went to work for the City. He also testified that he had followed construction work most of his mature life. Appellee's wife testified that she had never seen him as sick as he was on January 7, 1965 when he came home, and described in detail his appearance.

Dr. Hunt who examined and treated appellee immediately after January 7, 1965, testified that he took a history from appellee and that it related a long use of the insecticides; that the insecticides were very poisonous; that the insecticides included DDT and many other insecticides that were poisonous. From this history, the doctor placed appellee in the hospital and made numerous tests which resulted in a finding by the doctor that appellee had an injury to the liver and heart which were permanent and were brought on by contact with the poisonous insecticides, not on one occasion, but by many; that appellee was not able to do manual labor because of the injury to the liver and the heart and would never be again. It appears from the doctor's testimony that the poison from the insecticides could be absorbed through the skin or could be inhaled. The record is silent, however, as to when or how appellee came in contact with the insecticides except to surmise over the years he inhaled and absorbed through the skin sufficient quantities to bring about the injury to the liver and heart which the doctor found to exist.

There can be no doubt but that an accidental injury brought on by contact with poisonous gas is sustainable under our workman's compensation law as pointed out

by Justice Leddy in the early case of Barron v. Texas Employers' Insurance Ass'n., Tex.Com.App., 36 S.W.2d 464, and authorities therein cited. In defining an accidental injury, the Court held:

"A distinguishing characteristic of an accidental injury is that it can always be traced to a definite time, place, and cause."

Applying this rule to the facts of this case, we must hold that the evidence is entirely absent to show a time and place where the accident happened. There are many cases supporting a recovery for an accidental injury from poisonous gas fumes but in each instance, the record reveals a definite time and place and cause of the injury.

▇▇▇ The facts of this case bring it within the rule announced in the case of Frazier v. Employers Mutual Casualty Company, Tex.Civ.App., 368 S.W.2d 955, which distinguishes between accidental injury and occupational disease and denies recovery to the employee:

"An industrial accident or accidental injury is distinguished from an occupational disease by the following characteristics: An industrial accident or accidental injury can always be traced to a definite time, place and cause, whereas an industrial disease is of slow and gradual development, and the time, place and cause thereof are not susceptible of definite ascertainment.

\* \* \* \* \* \*

"To hold that appellant, under these facts, has sustained an injury, or an accidental injury, under our Workmen's Compensation Law would be to disregard the distinction which the Legislature has made between an injury and a disease emanating from an occupation. This is not meant to imply that all occupational diseases are compensable under our statute. They are not. Only those meeting the requirements of the statute are compensable under it. Sec. 25, Art. 8306, V.A.C.S. Under the evidence appellant had contracted a disease, at least partly, from the work in which she engaged. As to her, it is an occupational disease. \* \*

"In order to hold that appellant has sustained an injury as claimed we would also have to disregard the decisions which hold that an injury or an accidental injury, under the Workmen's Compensation Act, must be traced to an incident occurring at a definite time and place and as a result of a definite cause. \* \* \*"

▇▇▇ It is our opinion that the judgment of the trial court is not supported by any evidence of an accidental injury to appellee.

▇▇▇ In reaching this conclusion, we are aware of the rule that the evidence must be considered and viewed in a light most favorable to the judgment. City of Houston v. Chapman, 132 Tex. 443, 123 S.W.2d 652.

Because of the lack of evidence, the judgment of the trial court will be reversed and here rendered for appellant.