The MILLERS MUTUAL FIRE INSUR-
ANCE COMPANY OF TEXAS,
Appellant,

v.

Lee Dell GILBERT, Appellee.

No. 7200.

Court of Civil Appeals of Texas,
Beaumont.

Dec. 17, 1970.

Morehead, Sharp, Tisdel & Gibbins, Plainview, for appellant.

Bobby D. Allen, Lubbock, for appellee.

KEITH, Justice.

Plaintiff recovered judgment for total and permanent disability under the Workmen's Compensation Law for injuries received while working for Plains Warehouse Company in Lubbock. In his trial pleading, plaintiff alleged that he received such injuries in the course and scope of his employment with his employer, saying:

"Plaintiff was using fumigation fluid which contained toxic and irritating chemicals and ingredients, including carbon tetrochloride [sic] and carbon bi sulfide. Plaintiff was exposed to, inhaled and breathed such irritating fumes and toxic ingredients of such fumigant over an extended period of time. Such prolonged exposure to and inhalation of the carbon tetrochloride [sic], carbon bi sulfide and ingredients of such fumigant, and fumes thereof, had a severe toxic effect on Plaintiff's body."

■ Defendant contends that there was no evidence to support the jury's finding that plaintiff sustained an accidental injury in the course of his employment; and, alternatively, that such finding is against the great weight and preponderance of the evidence. Since the point, if sustained, would be controlling on the appeal, we consider points four, five, and six at the outset.

Special Issues Nos. 1, 2, and 3 submitted whether plaintiff sustained a personal injury while working as an employee, in the course of his employment. The definitions accompanying these issues were the standard and customary definitions which have been used in countless charges. Defendant, however, contends that under the peculiar circumstances of this case, the definitions permitted a recovery for disability resulting from an occupational disease when the case was pitched upon the theory of an accidental injury. Plaintiff, on the other hand, asserts that he tried the case upon the theory of aggravation and that the charge was sufficient under the evidence. The contentions so advanced will require an analysis of the evidence offered by the parties. In considering the no-evidence point, we will look only to the evidence supporting the verdict, while in our consideration of the point relating to the great weight and preponderance of the evidence, we will consider the record as a whole. We do note, preliminarily, that the defendant's theory of occupational disease and plaintiff's reliance upon aggravation were both pleaded in the most general terms, but without objection from either party.

Defendant calls our attention to the allegations previously quoted as to the inhalation of the toxic fumes "over an extended period of time" and the fact that carbon bisulfide is one of the specific chemicals included within the provisions of Article 8306, § 20(a) (6), Vernon's Ann.Civ.St. Thus, the question before us is brought into acute focus by the language to be found in Solomon v. Massachusetts Bonding and Insurance Co., 347 S.W.2d 17, 19 (Tex. Civ.App.—San Antonio, 1961, error ref.):

"An industrial accident or accidental injury is distinguished from an occupational disease by the following characteristics: An industrial accident or accidental injury can always be traced to a definite time, place and cause, whereas an industrial disease is of slow and gradual development, and the time, place and cause thereof are not susceptible of definite ascertainment. [Citations omitted.]"

See also, Frazier v. Employers Mutual Casualty Company, 368 S.W.2d 955 (Tex. Civ.App.—Austin, 1963, error ref., n. r. e.); Consolidated Underwriters v. Wright, 408 S.W.2d 140, 144 (Tex.Civ.App.—Houston, 1966, error ref., n. r. e.); Hartford Accident and Indemnity Co. v. McFarland, 433 S.W.2d 534, 536 (Tex.Civ.App.—Tyler,

1968, error ref., n. r. e.); American General Insurance Company v. Johnson, 456 S.W.2d 188, 190 (Tex.Civ.App.—Houston, 1st, 1970, error granted).

Defendant's counsel, with commendable candor, also calls to our attention the language to be found in Texas Employers' Insurance Association v. Cross, 358 S.W. 2d 156, 157 (Tex.Civ.App.—San Antonio, 1962, error ref. n. r. e.), an opinion written by Justice Pope, wherein the court said:

"Because contact dermatitis is listed in Section 20, Article 8306, Vernon's Tex. Civ.Stats., as one of the diseases which is compensable as an occupational disease, does not mean that it could never be the result of an accidental injury. The decisions even prior to the amendment of the occupational disease statute in 1955, permitted recovery, as accidents, for some of the things which are listed in that statute, provided they met the test stated in Barron v. Texas Employers' Ins. Ass'n, supra [36 S.W. 2d 464 (Tex.Comm.App., 1931)]." (Other citations omitted.)

The statement of facts is lengthy (371 pages) and it would unduly extend this opinion to quote extensively from the record which we have considered in deciding the points under discussion. Plaintiff was a 49-year-old illiterate who had done manual labor all of his life. His job with this employer was to spray the grain stored in the warehouses when an infestation of insects was noted. This spray, according to a leading question propounded to him, consisted of eighty per cent carbon tetrachloride and twenty per cent carbon bisulfide, which he applied with a power spray to the grain stored in the enclosed warehouse space. Some of the time he used a mask but said "it wouldn't do no good on the 80/20. * * * because it still goes through it [the mask]." This spraying would be done at irregular intervals, sometimes weekly and at other times more infrequently. On occasion, his supervisor, Cannady, would take him to other towns where he fumigated grain for others.

The "first time that you [Gilbert] got a pretty good slug of this 80/20, this carbon tetrachloride and carbon bisulfide" was "about three, four years ago, I believe," while he was trying to exterminate wood rats in a pit. He was hospitalized because of this occurrence, and was off from work for about four days because of the effects of the inhalation. That is when he first began to experience "roaring" in his head and began to have trouble with his eyesight.

On another occasion, while spraying grain, his employer told him to remove the nozzle so that the chemical could run freely from his hose, and "the hose busted in my face and got in my eyes like that—made me lose one of my eyes." The best he could fix the time of this latter occurrence was about "Thanksgiving, 1967, or thereabouts." A third exposure occurred when he was working in another grainery using the chemicals when "it knocked me out" and he had to be revived through assistance of his employer, Cannady. Upon this occasion, the chemical was supplied in 55-gallon drums.

The plaintiff was hazy as to the date of his alleged injury forming the basis of this suit, finally saying that it was "along in January" of 1968, and at a time when his employer had obtained ten drums of the chemicals. He used up the contents of nine of the drums spraying the grain over a three-day period; and, upon the date of his alleged injury, upon the fourth day, he used the contents of the last drum. After he had finished spraying the last of the chemicals, his employer took him to the employer's home to do some work there. At that time he was chilled and shaking as if he were cold. He laid down near a heater on the warehouse premises "for a spell of time" but accepted work for another employer upon the same day, working in some grain cars. His testimony was that he was so weak that he could not do the work and

quit after a short time, and was taken home. He went to a clinic on what was probably the following day; and, according to plaintiff, "I ain't never put out nary a drop [of the chemicals] since."

Upon cross-examination, plaintiff testified that he had done quite a bit of fumigating over the previous nine or ten years and agreed that every time he did the fumigating, it would make him sick and that "this thing [his present complaints] didn't just jump on you [Gilbert], * * * but it just came on * * * gradually and slowly." We now quote some of the cross-examination upon which defendant relies for reversal;[1] the questions relating to the date of the alleged injury:

"Q So, you really don't know when you got real sick, if it was the morning or the afternoon or even the day or the time or anything like that, you're just not sure and don't know?

"A Well, when I plumb give up it was in the morning.

"Q All right. But, you'd been getting sick over a period of time before that, gradually every day?

"A Yes, sir.

"Q Until you finally gave it up?

"A Yes, sir.

"Q Is all of that a fair statement, Mr. Gilbert?

"A That's a fair statement.

"Q All right. As far as saying that you got sick at any definite time or place or anything like that, you just can't say, it just happened over a period of time gradually?

"A Well, no, sir, I can say right where I got sick at.

"Q All right. You know that you got sick on the job, but what I mean— is that correct, you know you got sick on the job, but you don't know when it was as far as any definite time or place or occurrence or anything like that, it just happened to you gradually over a period of time?

"A Yes, sir, I sure can remember that.

"Q All right, sir. Now, I want you to tell me, please, Mr. Gilbert—

"A Yes, sir.

"Q —as to any of these sicknesses that you've had and as you've gotten gradually sicker on any of them, you can't definitely remember a time or a place or any specific or special time of an episode, you can't remember any special occurrence or occasion, it just started happening three days before Thanksgiving of '67 and worked its way down to the present time in January of '68 when you just had to give it up?

"A Well, sir, I'll tell you this—like this on it, when I put the last drum of that—the ten drums out—

"Q You were too sick to go any further?

"A Yes, sir, because I had to be led out of the building.

"Q All right, sir. Now, Mr. Gilbert, but —so there'll be no mistake about it, were you right when you told me in your deposition that you really started getting sick about three days before Thanksgiving of 1967 and you just kept getting sicker and sicker?

"A Yes, sir, every time I'd get in it I would, yes, sir.

"Q All right. And as far as any definite time or place or occurrence or

1. The jury, of course, had the opportunity to observe the witness as he parried the leading questions of counsel, and could evaluate his credibility, something which we cannot do upon the written record.

occasion, you just don't know, it gradually came upon you and just made you sicker and sicker until you had to quit?

"A  Well, I'll just tell you like this, when I walked up here this morning, I got a job to do—to do the job in this case and make it out of here because I know that—I got to get at it.

"Q  All right, sir. Is what I asked you correct, that it just gradually came on you over a period of time?

"A  Yes, sir."

We do not consider, at this time, defendant's subsidiary contention relating to plaintiff's use of intoxicating liquor during the time he was using the fumigant, reserving such for a subsequent discussion. Defendant, in this connection, does bring forward this testimony which we find true to the record:

"He [plaintiff] admitted drinking intoxicating beverages since Christmas of 1967. In other words, after he began getting sick, on Thanksgiving of 1967, he continued drinking. He drank before he got sick, during the period of time he was sick and, also, some after he got out of the hospital."

Plaintiff's deposition testimony, offered by the defendant, was damaging to his contentions advanced upon the trial; but, when asked if his disability could be pinned down to one date or time or place, plaintiff said:

"A  Well, sir, I can pin down this definitely here. What just really got me, when I put that ten 55 gallon drums out, that's what really got me.

"Q  That put the finishing touches on it?

"A  Yes, sir."

Plaintiff offered Dr. Brown, who gave testimony to the effect that plaintiff's total and permanent disability was caused by the inhalation of the toxic fumes, most likely carbon bisulfide. He testified that inhalation of the fumes over a period of time would lead to a concentration of the poisons in the system, and "one good dose" would aggravate the condition "because it is accumulative." Dr. Brown was firm in his position that the drinking of intoxicating liquor while working around the fumigants was harmful. However, he ruled out both alcohol and carbon tetrachloride as the cause of plaintiff's condition, primarily because of negative findings as to liver damage. He did admit, however, that carbon bisulfide would occasionally cause liver damage too, but "it is not the rule in these cases." Dr. Brown was cross-examined vigorously, but with a modicum of success since he did not repudiate the testimony given on direct examination.

Defendant offered Dr. Pappas, an internist, as its medical witness, who gave evidence concerning his two examinations of the plaintiff. His testimony was such that it did not, as a matter of law, establish that plaintiff's disability was not caused by the inhalation of the toxic fumes.

From our review of the evidence, only a small part of which is included in the foregoing resume, we are of the opinion that the trial court did not err in overruling defendant's motion for a peremptory instruction or its motion for judgment non obstante veredicto. Defendant's point complaining of no evidence is overruled. The jury had the right to make its own determination as to the weight and credibility of the witnesses, including the plaintiff. Being convinced that there was evidence of an accidental injury, within the purview of the Compensation Law, the finding of accidental injury is not against the great weight and preponderance of the evidence. Texas Employers' Insurance Association v. Cross, supra (358 S.W.2d at p. 157); Texas Employers' Insurance Association v. Bradford, 381 S.W.2d 234, 235 (Tex.Civ.App.—Beaumont, 1964, error ref. n. r. e.).

Defendant's first two points relate to the court's refusal to submit certain re-

quested special issues relating to its defense of alcoholism.[2] Included in this series is the third point relating to an objection to the charge because of its failure to exclude harm suffered by plaintiff while in a state of intoxication and its requested instruction tendered in that connection.[3] We will treat the points involving intoxication together.

Special Issue No. 16, contained in the court's charge, read as follows:

"Do you find from a preponderance of the evidence that the Plaintiff, LEE DELL GILBERT'S, incapacity to work, if any, is solely the result of prior accidental injuries or diseases or other causes disconnected with his work as a [sic] employee of PLAINS WAREHOUSE during the year 1968?"

To which the jury answered: "It is not solely caused."

Although this issue is global in scope, defendant asserts that it was entitled to have its issue on intoxication submitted independently and separately. We note that the burden of proof in No. 16 is placed upon defendant [Cf. Texas Employers' Insurance Association v. Beard, 390 S.W.2d 59, 60 (Tex.Civ.App.—Fort Worth, 1965, error ref. n. r. e.)], but no complaint is made concerning the burden of proof.

■ While the issue of voluntary use of intoxicants was raised by the evidence, and there is evidence that the effects of the toxic fumes from the chemicals used would be aggravated by the use of liquor, the circumstances surrounding the use of the liquor and the chemicals are such as to preclude a finding of sole cause. Assuming, without deciding, that the evidence was sufficient to raise the issue, we nevertheless remain convinced that defendant received a fair submission of the defense in No. 16. The issue covered not only prior diseases and injuries, but "other causes" which were "disconnected with his work." It was not entitled to Requested Issue No. 1 and its refusal by the trial court was not error. *Beard Case,* supra (390 S.W.2d at p. 61); Liberty Universal Insurance Company v. Burrell, 386 S.W.2d 323, 326 (Tex.Civ.App.—Fort Worth, 1965 error ref. n. r. e.); Guzman v. Maryland Casualty Co., 130 Tex. 62, 107 S.W.2d 356, 357 (1937). Point one is overruled.

Defendant had pleadings to support its theory that intoxication prolonged plaintiff's incapacity or retarded his recovery, and no serious challenge is made to the form of the tendered issues. However, plaintiff asserts that the evidence did not warrant the submission of the issue. Article 8307, § 4, V.A.C.S., reads in part:

"If any employee shall persist in insanitary or injurious practices which tend to either imperil or retard his recovery, * * * the board may in its discretion order or direct the association to reduce or suspend the compensation of any such

2. *Requested Issue No. 1:* "Do you find from a preponderance of the evidence that the plaintiff, LEE DELL GILBERT'S, incapacity, if any you have found, is not caused solely by alcoholism occurring subsequent to January 31, 1968 disconnected with any alleged accidental personal injury claimed by the said Plaintiff?"
*Requested Issue No. 2:* "Do you find from a preponderance of the evidence that the Plaintiff's incapacity or disability, if any, was not prolonged or Plaintiff's recovery, if any, was not retarded due to the failure of the Plaintiff, LEE DELL GILBERT, if any, to follow the advice and instructions of his doctors not to drink alcoholic beverages?"

*Requested Issue No. 2b* (contingently submitted upon a negative answer to No. 2) : "For how long a period of time, if any, do you find from a preponderance of the evidence that Plaintiff's disability, if any, was not prolonged as a result of the failure of the Plaintiff, if any, to follow the advice and instructions of his doctors as inquired about above?"

3. To the boiler-plate definition of damage or harm to the body, defendant would have added: "and you are further instructed as a part of the law in this case that the term personal injury does not include any harm suffered while the Plaintiff was in a state of intoxication, if any."

injured employee. No compensation shall be reduced or suspended under the terms of this Section without reasonable notice to the employee and an opportunity to be heard."

■ Our review of the evidence does not disclose that any doctor had advised the plaintiff to "get on the wagon" and quit the use of intoxicants, as an aid to his recovery. Under the circumstances, the case is ruled by a prior opinion by this court in Argonaut Underwriters Insurance Co. v. Byerly, 329 S.W.2d 937, 943 (Tex. Civ.App.—Beaumont, 1959, error ref. n. r. e.), from which we quote:

"Appellant properly pleaded the issue, but we do not believe that the evidence raises it. No doctor had informed appellee that he was doing or failing to do anything that would hinder his recovery, while the claimant was repeatedly so informed in the case of Goff v. Texas Emp. Ins. Ass'n, Tex.Civ.App., 278 S.W.2d 326, relied upon by appellant. It is the view of this court that the rule set forth in Texas Employers' Ins. Ass'n v. Galloway, Tex.Civ.App., 40 S.W.2d 973, to the effect that in order to raise the issue of insanitary or injurious practices on the part of the injured employee which tends to either imperil or retard recovery of his injury within the meaning of the quoted section, it should be shown that he was requested to refrain from such practices and his refusal to do so. Texas Employers' Ins. Ass'n v. Downing, Tex.Civ.App., 218 S.W. 112; Texas Employers' Ins. Ass'n v. Roberts, Tex.Civ.App., 281 S.W. 2d 104."

Point two is overruled.

■ Defendant's third point presents a more serious question, since the statute,

Article 8306, § 1(3), V.A.C.S., provides that "such employer may defend in such action on the ground that the injury * * was so caused while the employé was in a state of intoxication." The court's definition of personal injury did not include any reference to the defense of intoxication. Defendant objected to the charge for the failure to include such an instruction, the objection calling to the court's attention the decision of Traders & General Ins. Co. v. Ross, 263 S.W.2d 673, 675 (Tex.Civ.App.—Galveston, 1953, error ref.). In Ross, the court held that it was error, in the heat exhaustion case arising under the exception found in Article 8309, § 1, V.A.C.S. to refuse such an instruction. The same article and section, subdivision (3) denies compensation for an injury "received while in a state of intoxication."[4]

Both plaintiff and his employer testified unequivocally that plaintiff was not drunk or under the influence of intoxicating liquor at the time he received the alleged injuries forming the basis of his claim. Furthermore, the complaint as to the refusal of the requested instruction finds its base in the objections of the defendant to the charge, not in a specially requested instruction. See the last sentence in Rule 273 and the comment of Chief Justice Dixon in Cudmore v. Richardson-Merrell, Inc., 398 S.W.2d 640, 645 (Tex.Civ.App.— Dallas, 1966, error ref. n. r. e.). Assuming the point is properly before us, of which we have some doubt, we remain unconvinced that reversible error is presented. The point is overruled. Rule 434.

■ Defendant complains of jury misconduct in (a) jurors relating to others their complaints of pain arising from back injuries; and, (b) a commitment to find total and permanent disability once it had been found that plaintiff sustained a per-

---

4. The objection was leveled at the definition of "personal injury" when, more appropriately and accurately, it should have been made applicable to the definition of course of employment; but, the parties have not raised a question as to the adequacy of the method by which the alleged error was preserved and we do not raise the question sua sponte.

sonal injury as submitted in Special Issue No. 1. We have reviewed the evidence tendered in support of the contentions so advanced and find no merit in the points. Plaintiff was not seeking compensation for back injuries but for injuries resulting from the aggravation of his physical condition through the inhalation of the toxic fumes incident to his employment. In addition, the trial court, in overruling the motion for new trial, made an implied finding that the misconduct did not occur. State v. Wair, 163 Tex. 69, 351 S.W.2d 878 (1961); 3 McDonald, Texas Civil Practice (Rev.Ed.), § 14.16.2, p. 577. Harmful and reversible error is not shown.

The remaining points, having also been examined, do not present reversible error; and, from our review, the judgment is free of error requiring a reversal of the judgment; it is, therefore, affirmed.