COMMERCIAL INSURANCE COMPANY
OF NEWARK, NEW
JERSEY, Appellant,

v.

Jeannette SMITH, Appellee.

No. 18166.

Court of Civil Appeals of Texas,
Fort Worth.

March 13, 1980.

Rehearing Denied April 10, 1980.

Fillmore & Camp, and H. Dustin Fillmore and Richard L. Scheer, Fort Worth, for appellant.

Walter E. Steimel, Fort Worth, for appellee.

## OPINION

HUGHES, Justice.

This is a workers' compensation case involving the time when an occupational disease first distinctly manifested itself. Jeannette Smith was awarded, by judgment on a jury verdict, permanent partial disability as a result of her allergic reaction to chemical substances, especially those in a glue, used by her employer in its manufacturing processes. The crucial questions in this appeal are whether Mrs. Smith timely complied with the notice and claim filing provisions of the Workers' Compensation Act.

We affirm.

The applicable statute is Tex.Rev.Civ. Stat.Ann. art. 8307 § 4a (1967) which provides:

"Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after . . . the first distinct manifestation of an occupational disease, and unless a claim for compensation with respect to such injury shall have been made within six (6) months after . . . the first·distinct manifestation of an occupational disease; . . . . For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice, and the filing of the claim before the Board. (Acts 1947).

Good cause is not an issue in this case.

Mrs. Smith had the burden of establishing that she complied with both of the requirements in this section in order for the trial court to have jurisdiction of this suit. She pled that she met all jurisdictional requirements for perfecting her claim. Her employer's insurance carrier, Commercial Insurance Company of Newark, New Jersey, answered by sworn denial alleging that her employer did not have notice within the statutory time limits and further that her claim was not timely filed. No issues were submitted to the jury on these two questions and Commercial's objections to their omission were overruled.

The material evidence in this case is as follows: Mrs. Smith went to work for ARA Manufacturing in 1972. She worked on the assembly line in their manufacturing plant assembling air conditioners for various types of vehicles. She did not have one certain job but would work on a variety of projects, sometimes changing in the course of a day or over a period of days. The work, even on a specific air conditioner, was seasonal. She first began experiencing symptoms in the latter part of 1974, around December. Her face, feet, hands and legs swelled. Also, her eyes swelled and burned. The symptoms coincided with her work on an air conditioner for Ford Motor Company and involved the use of a certain glue. She

testified that this particular glue was only used on these air conditioners. Her job was to apply it with a brush to insulate each side of a heater coil. She stated that the problems with the glue "gradually came on" and that, at the time they began, she did not recognize what was causing the problems. She testified that she told her supervisor "when I began to notice it."

Other workers testified as to the irritations caused by working both with this glue and others used in the plant, and to Mrs. Smith's symptoms. John McDowell, her supervisor, testified that many employees found the chemical substances used irritating. Mrs. Smith reported her symptoms to John McDowell, who testified she did so on February 3, 1975. He sent her to Dr. Womble, the company doctor, that day. Dr. Womble diagnosed her as having an allergy to the chemical substances with which she worked, gave her some medication, and sent her back to work with instructions to avoid chemicals, fumes, and solvents. She returned from the doctor with a slip from him containing his diagnosis and instructions. McDowell testified he could not remember whether Mrs. Smith returned the slip to him or to someone else in the company, but the next morning, February 4, 1975, James Bedford, one of McDowell's supervisors, filled out an accident report. Another employee of ARA testified she prepared the E–1, the Employer's First Report of Injury to the Industrial Accident Board, February 5, 1975, but it was not filed until February, 1976, a year later.

By its first three points of error, Commercial argues that Mrs. Smith failed to establish either by jury answer or by conclusive evidence, as required by Rule 279, her compliance with the timely notice provisions of art. 8307 § 4a.

It is clear Mrs. Smith's employer had notice of her occupational disease February 4, 1975. The record is uncontradicted. Her supervisor admitted it from the stand. The question then is whether this notice was within 30 days of the first distinct manifestation of her occupational disease. Commercial argues that while her employer had

notice of her disease, it was never established that this notice was within 30 days of its first distinct manifestation. Commercial contends it was never established when the first distinct manifestation of her disease occurred, nor that it occurred on February 4, 1975. It argues that the only date mentioned in this connection was in late 1974 when Mrs. Smith testified she first noticed a problem she related to her work, and therefore the notice was untimely. It would have us hold that Mrs. Smith admitted this date as her first distinct manifestation.

Mrs. Smith argues that no issue was necessary on the question of notice because her supervisor admitted on the stand that he had notice February 3, 1975, the day she testified was the first day she "began to notice" the problem and reported it to her supervisor because she knew that he was the person to whom she was to report such a thing.

The phrase "first distinct manifestation" has seldom been the subject of judicial interpretation in this state. It was first construed in *Travelers Insurance Company v. Miller*, 390 S.W.2d 284 (Tex.Civ.App.—El Paso 1965, no writ). As in this case, the carrier in *Miller* contended that notice had not been given within 30 days of the first distinct manifestation. The court held that the phrase meant the first time the claimant knew, or should have known, that he had an occupational disease. It stated:

"A distinct manifestation of an occupational disease, therefore, denotes that its existence is clearly evident. It should be clear to the claimant before the loss of his right to compensation is denied for failure by him, or someone in his behalf, to take positive action within the period of time prescribed. We think that the statute means that the manifestation must be distinct to the claimant, reasonably sufficient to cause him to believe that he has an occupational disease." 390 S.W.2d at 288.

Commercial would have us view the evidence as if this claim had a certain date that could be established as the first dis-

tinct manifestation. It would alternatively have us interpret that phrase to mean first symptom. Its arguments are more suited to accidental injuries, and there are inherent differences between accidental injuries and occupational diseases. "An industrial accident can always be traced to a definite time, place and cause, whereas an industrial disease is a slow and gradual development," and the time, place and cause thereof are not susceptible of definite ascertainment." *Aetna Cas. & Sur. Co. v. Shreve*, 551 S.W.2d 79 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ) at 81.

■ We are faced with the problem of fixing a date for a gradually or slowly developing condition. We note there could be occupational diseases in which the time period of the first distinct manifestation, as defined in *Miller*, could consist of a period of several months or longer as opposed to one certain date. See *Travelers Insurance Company v. Rowan*, 499 S.W.2d 338 (Tex. Civ.App.—Tyler 1973, writ ref'd n. r. e.). We are of the opinion that application of the standards used for ascertaining the date of an accidental injury would violate the clear distinctions the legislature chose to make when it included occupational diseases in the statute in its present fashion.

Further, we cannot agree with Commercial that Mrs. Smith's statements concerning the beginning of her reactions to the glue in 1974 were an admission by her of the first distinct manifestation of her disease. Her testimony on the subject, as well as the testimony of the other two employees, attested merely to the irritations and side effects of the chemical substances used by ARA on its various assembly lines. The work area is one large room, and while it is ventilated, this does not eliminate irritating fumes. We hold that under these facts Mrs. Smith's first symptom is not the first distinct manifestation. The period in 1974 amounts to no more than an approximate time when her symptoms began. To hold otherwise would be to interpret first distinct manifestation to mean first symptom.

■ Nevertheless, in order to maintain her verdict, Mrs. Smith had the burden of establishing, either as a matter of law or by a fact finding, that her employer had notice within 30 days of the first distinct manifestation of her disease. As noted above, Commercial objected to the omission of an issue on this question and now alleges that the trial court erred in failing to require a jury finding on it. Commercial argues that *Miller, supra*, requires a jury determination as to when an occupational disease reaches the stage where the claimant knew or should have known he or she had an occupational disease. 390 S.W.2d at 288. It further argues that even if Mrs. Smith testified to a definite date (which it alleges she did not), this could have at most raised an issue for the jury as she was an interested party and therefore her credibility was at issue.

■ It is unnecessary to submit an issue on a question about which there is no genuine controversy and with reference to which only one conclusion can be drawn. This is true even though issues are controverted by pleadings: If there is no conflict in the evidence with regard to the matter, it need not be submitted to the jury. *Vineyard v. Harvey*, 231 S.W.2d 921 at 924 (Tex.Civ. App.—Amarillo 1950, no writ). Tex.R. Civ.P. 279. Therefore, we must decide whether in the state of the record before us, Mrs. Smith's testimony, combined with other evidence, if any, was sufficient to conclusively establish the fact that her employer had timely notice.

■ Whether the evidence raises an issue is judged by the same tests employed in determining whether an instructed verdict should be granted. Usually the evidence given by an interested witness or party cannot be the basis of an instructed verdict as it merely raises an issue of credibility for the jury. However, our Supreme Court recently discussed the exception to this rule in affirming a directed verdict based on the uncontradicted testimony of a party to the lawsuit. *Collora v. Navarro*, 574 S.W.2d 65 (Tex.1978).

The court in *Collora* stated that the general rule is not absolute and its application

must turn on the facts of each case. It set out the standards by which the rule and its exceptions are to be measured:

"Is the testimony clear, direct, and positive? Is it internally consistent? Is it contradicted or corroborated by other circumstances in the case? Is it contradicted or corroborated by other witnesses? Does the opposing party possess the means to verify or dispute the testimony? Does he have a way to test the witness' credibility? Did he make use of those means?" 574 S.W.2d at 69.

We have closely examined the entire record, including the exhibits. Much of the relevant evidence is set out above. Able counsel represented both sides and extensively cross-examined all witnesses. We are of the opinion that Mrs. Smith's testimony on the question of notice to her employer was clear, direct, positive and uncontradicted. It is corroborated by other evidence in the case, here the intermittent use of the glue and the nature of her allergy. McDowell, her supervisor, testified his employees were instructed to report any on the job injury or sickness to a supervisor. She testified that she reported to her supervisor, the one she knew she was to report work related health problems to, as soon as she connected the problem with her work. The company doctor's diagnosis corroborates Mrs. Smith's testimony. Her own doctor was extensively examined. All of the relevant circumstances and testimony corroborated her assertion. In short, we can find nothing in the record to cause any reasonable suspicion as to its truth. See 3 R. McDonald, Texas Civil Practice § 11.28.6 at 249 (1970).

■ Additionally, we are of the opinion that the question of first distinct manifestation can be analyzed using the principles applied to a good cause excuse in an accidental injury case, that is, "the standard of ordinary prudence under all the facts and circumstances." Sartwelle, 29 S.W. Law J. at 196, "Annual Survey of Texas Law—Workmen's Compensation" (1975). See *Aetna Cas. & Sur. Co. v. Hughes*, 497 S.W.2d 282 (Tex.1973).

■ We believe this case can be more clearly analyzed by turning the inquiry around. Under all the facts and circumstances of this case, was there an earlier time than the one on which Mrs. Smith informed her supervisor of her work connected health problems when it would be reasonable to expect her, in the exercise of ordinary prudence, to assert her rights? As stated in the *Miller* case, our legislature has provided a flexible standard for when the statutory time period for notice begins to run. 390 S.W.2d at 288. We interpret this standard to mean that limitation for notice begins to run when the claimant, as a reasonable man or woman, recognizes the nature, seriousness and, most important under the facts of this case, the work-related nature of the disease.

Commercial's next three points of error assert that Mrs. Smith failed to establish either conclusively or by jury answer her compliance with the statutory requirement set out in art. 8307 § 4a for filing her claim for compensation within six months of the first distinct manifestation of her occupational disease. The relevant statute is set out above.

■ We overrule these contentions due to the employer's failure to file its required Employer's First Report or E–1, thereby tolling the statutory limitations period. Mrs. Smith filed her claim in June 1976 within the six month period which began to run in February 1976 when the employer filed its E–1 with the Board. Art. 8307 § 7 (Supp.1980) clearly requires that an employer file a written report with the Board within eight days after the employee notifies the employer of a definite manifestation of an occupational disease. Art. 8307 § 7a (Supp.1980) clearly tolls the limitations with respect to filing claims set forth in § 4a until the report is furnished as required.

■ Commercial's tenth point of error alleges the court erred in failing to submit some of its defensive issues on injurious practices which it claims it alleged and proved. Mrs. Smith asserts that the evi-

dence did not warrant their submission. The relevant statute, art. 8307 § 4, reads in part:

"If any employee shall persist in insanitary or injurious practices which tend to either imperil or retard his recovery, . . the board may in its discretion order or direct the association to reduce or suspend the compensation of any such injured employee. No compensation shall be reduced or suspended under the terms of this Section without reasonable notice to the employee and an opportunity to be heard."

For Commercial to be entitled to an issue on the defensive theories embodied in § 4, it must have alleged and proved a request to and refusal by the claimant to refrain from the practice which it contends to be injurious. *Millers Mutual Fire Ins. Co. of Texas v. Gilbert*, 462 S.W.2d 112 (Tex.Civ.App.— Beaumont 1970, writ ref'd n. r. e.). Its pleadings properly set forth such allegations. But, the statute also requires that the employee be given reasonable notice before the injurious practice defense is available. Mrs. Smith testified that she went to the company doctor twice, the second time for a checkup one day after the first visit. He advised her "not to work on that glue line if there were other jobs I could do out there". Commercial attempted to prove and argues now that Dr. Womble's instructions were a request to her to cease an injurious practice. We disagree. There is no evidence in the record that he advised her that her recovery would be imperiled or retarded if she went on working for ARA. Therefore, we hold that Dr. Womble's instructions were not the type of request contemplated by the statute. *Argonaut Underwriter's Insurance Co. v. Byerly*, 329 S.W.2d 937 (Tex.Civ.App.— Beaumont 1959, writ ref'd n. r. e.). This point is overruled.

Commercial attacks the verdict by several other points of error, but after examination, we find they are without merit and overrule each of them.

All points of error having been examined and each overruled, the judgment is affirmed.

MASSEY, C. J., dissents.

MASSEY, Chief Justice, dissenting.

While I agree with the majority's analysis of the difficulties attendant in attempting to apply a rigid rule to force claimants in occupational disease cases to establish a time certain from which to measure the limitations of time, I disagree with their holding that Mrs. Smith conclusively established timely notice and claim.

Perhaps, if the issues had been submitted to the jury and been answered against Mrs. Smith, any answers against her would, under the record, have been against the weight and preponderance of the evidence. However, such an evidentiary evaluation would not be sufficient to justify refusal to submit the issues to the jury.

I would hold that Mrs. Smith's credibility having been cast in question there was necessity for jury issues because the question of when her first distinct manifestation occurred was of such a subjective nature that Commercial could not readily contradict or disprove her testimony. Furthermore it was only by making the inference that the majority held actions to have been timely from date of any "first distinct manifestation." The basis for the exception to the interested witness rule relied on by the majority is weakened somewhat when the testimony of Mrs. Smith is recognized to be such that it could not be readily contradicted if untrue.

I would reverse the judgment and remand the cause for a new trial.