Mary Alice **BUTLER**, Appellant,

v.

**FEDERATED MUTUAL INSURANCE COMPANY**, Appellee.

No. 2–93–124–CV.

Court of Appeals of Texas, Fort Worth.

March 9, 1994.

Rehearing Overruled April 13, 1994.

Baker, Brown & Dixon and James E. Brown, Dallas, for appellant.

Strasburger & Price, L.L.P. and David W. Whitehurst, Dennis L. Roossien, Jr., Dallas, for appellee.

Before FARRIS, LATTIMORE and HICKS, JJ.

## OPINION

FARRIS, Justice.

This is a workers' compensation case. Appellant, Mary Alice Butler, appealed the Texas Workers' Compensation Commission's Award to the district court. The carrier, Federated Mutual Insurance Company (Federated), moved for summary judgment on four grounds and the district court granted the motion on two of them.[1]

Butler appeals, contending there were fact issues precluding summary judgment. Fed-

---

1. The trial court granted summary judgment on grounds (2) and (3) of the following grounds raised by Federated:
   (1) Butler made an informed election of remedies by seeking benefits under a group health insurance plan;
   (2) Butler failed to provide timely notice to her employer of the alleged injury pursuant to article 8307, section 4a of the Texas Workers' Compensation Act;
   (3) Butler failed to timely file her claim for compensation with the Texas Workers' Com-

erated contends the summary judgment should be affirmed on the grounds stated in the judgment or on one of the other grounds it raised in its motion. We sustain Butler's points of error because there were issues of fact concerning whether she gave timely notice, and whether she filed her claim in a timely manner. At the same time, we deny Federated's request that we affirm the summary judgment on one of its remaining grounds because we do not consider alternate grounds when the trial court specifically rules on a different ground.

The judgment is reversed and the case is remanded for trial.

■ Federated argues the summary judgment should be summarily affirmed on the grounds stated in the trial court's judgment because Butler did not bring forward a complete record of the proceeding below. Federated relies on *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670 (Tex.1990), *cert. denied*, 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); however, it is distinguishable from the current case.

In *DeSantis* appellee sued appellants to enforce a noncompetition agreement and moved for summary judgment. At the hearing, appellants presented no evidence showing the agreement was unreasonable, but appellee introduced an affidavit to support its position. *Id.* at 689. Consequently, the trial court granted the motion finding the noncompetition agreement was reasonable. *Id.* On appeal, appellants did not bring forward the affidavit, so the appellate court could not determine whether appellee met its burden. *Id.* Because appellants failed to bring forward a complete record and produced no proof to support its position and controvert appellees' position, the court of appeals presumed the omitted documents supported the trial court's judgment. *Id.*

Because Butler controverted the evidence presented by Federated and presented such

pensation Commission within one year of the first distinct manifestation of her alleged condition pursuant to article 8307, section 4a of the Texas Workers' Compensation Act; and

controverting proof to this court, the substance of the omitted evidence is immaterial. Butler is entitled to reversal because she established a material fact issue exists precluding summary judgment.

The history of Butler's illness was undisputed. Butler suffered degenerative arthritis in both knees as early as 1985. By 1989, her illness had degenerated to acute arthritis. Her arthritis continued to worsen and by February 1991, she had undergone two surgeries to replace both kneecaps. Despite the surgeries, she continued to suffer. In July 1991, her doctor told her that her illness might have been caused by her employment because her job required her to stand for long hours on a concrete floor. Butler filed her initial workers' compensation claim with the Commission on July 31, 1991, and she gave notice to Federated on August 6, 1991.

■ In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); Tex.R.Civ.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue as to a material fact are resolved against him. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the nonmovant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence must be indulged in favor of the nonmovant and any doubts resolved in his favor. *Id.* Evidence which favors the movant's position will not be con-

(4) Butler's injury was a noncompensable ordinary disease of life.

sidered unless it is uncontroverted. *Great American*, 391 S.W.2d at 47.

■ Given the standard of review in summary judgment cases and the basis for the trial court's ruling in this case, summary judgment was proper if Federated proved Butler failed to fulfill the notice and filing requirements of article 8307, section 4a of the Workers' Compensation Act. TEX.REV. CIV. STAT.ANN. art. 8307, § 4a (Vernon Supp.) Pamph.1994).[2] Under article 8307, section 4a:

> Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained unless a notice of the injury shall have been given to the Association or subscriber within thirty (30) days after the happening of an injury or the first distinct manifestation of an occupational disease.... For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice....

*Id.* Consequently, Federated had to establish that Butler failed to give notice within thirty days of the first distinct manifestation of the disease and that no good cause existed for the delay.

■ *First distinct manifestation* means the first time the claimant knew, or should have known, that he had an occupational disease. *Travelers Ins. Co. v. Miller*, 390 S.W.2d 284, 288 · (Tex.Civ.App.—El Paso 1965, no writ) (emphasis added). The standard means that the limitation for notice begins to run when the claimant, as a reasonable man or woman, recognizes the nature, seriousness, and the work-related nature of the disease. *Commercial Ins. Co. v. Smith*, 596 S.W.2d 661, 665 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.).

■ If a person does not believe that his or her injury is severe or is mistaken as to

its cause, *good cause* can be established for the failure to timely file. *Cigna Ins. Co. v. Evans*, 847 S.W.2d 417, 420 (Tex.App.—Texarkana 1993, writ denied) (emphasis added). Good cause has been defined as existing when a person has prosecuted his claim with the diligence an ordinarily prudent person would have used under the same or similar circumstances. *Id.* The totality of the claimant's conduct must be considered in determining whether he or she acted with such ordinary prudence. *Moronko v. Consolidated Mutual Ins. Co.*, 435 S.W.2d 846, 848 (Tex.1968).

As the above case law shows, the tests for *good cause* and to determine when the *first distinct manifestation* of injuries occurred are the same. Therefore, Federated had to prove Butler failed to act as a reasonably prudent person under the circumstances.

Federated claims because Butler alleged August 1, 1990 was the injury date and she did not discover the work-related nature of the disease until July 1991, she did not prosecute her claim with the diligence of an ordinarily prudent person. Essentially, Federated argues the first distinct manifestation of injury occurred when the first symptom did. We reject this argument as we have rejected this theory in other occupational disease cases. *See Smith*, 596 S.W.2d at 664. In further support of its claim, Federated cites several accidental injury cases. However, these cases do not control here because they do not involve the same or similar circumstances because "[a]n industrial accident can always be traced to a definite time, place and cause, whereas an industrial disease is a slow and gradual development, and the time, place and cause thereof are not susceptible of definite ascertainment." *Aetna Cas. & Sur. Co. v. Shreve*, 551 S.W.2d 79, 81 (Tex.Civ.App.—Houston [1st Dist.] 1977, no writ).

Federated also claims Butler did not act reasonably because she made no effort to

---

**2.** Texas Workers' Compensation Act of May 15, 1973, ch. 88, 1973 Tex.Gen. Laws 187, 193, *amended by* ch. 326, sec. 1, 1985 Tex.Gen. Laws 1387, 1388, *repealed by* ch. 1, sec. 4.05, 1989 Tex.Gen. Laws 33 (effective January 1, 1991) (presently contained in TEX.REV. CIV.STAT ANN. art. 8307 (Vernon Supp. Pamph.1994)).

determine the cause of her knee problems. To support this position, Federated cites *Texas Employers' Ins. Ass'n v. Leathers*, 395 S.W.2d 601 (Tex.1965). Leathers was injured on the job on November 11, 1954, when an electric switch blew up in his face. His face and eyes were burned and the electric shock caused him to have severe dizzy spells which started about six months after the accident. *Id.* Leathers filed his claim on July 25, 1962. *Id.* For nearly seven years after Leathers began suffering from dizzy spells, he consulted with doctors numerous times, but not once did he inquire as to the cause of his dizzy spells. *Id.* at 603. It was not until Leathers discussed the matter with his brother, an ironworker, who suggested his condition might have been caused by the accident, that he filed his claim. *Id.* at 602. The court held if Leathers' brother, a layman, could tell him what was causing his dizzy spells some seven years later, then a doctor should have been able to tell him much sooner had he used any diligence. *Id.* at 603.

In contrast, Butler suffered an occupational disease and not an industrial accident followed by an industrial disease. Consequently, unlike Leathers, Butler did not have a triggering event that put her on notice to question the origin of subsequent ailments. Further, unlike Leathers, it was her doctor and not a layman who suggested her condition was work related. Consequently, we hold *Leathers* does not control here. Instead, we rely on *Smith* and *Rowan*, two occupational disease cases. *Smith*, 596 S.W.2d 661; *Travelers Ins. Co. v. Rowan*, 499 S.W.2d 338 (Tex.Civ.App.—Tyler 1973, writ ref'd n.r.e.).

Smith began working on an assembly line for a manufacturing company in 1972. In 1974 she first began experiencing swelling of her face, feet, hands, and legs. *Smith*, 596 S.W.2d at 662. The symptoms coincided with her work on an air conditioner and involved the use of a certain glue. *Id.* Smith stated that the problems with the glue were gradual and at the time she did not recognize what was causing the problems.

*Id.* at 663. She reported her symptoms to her supervisor who sent her to the company doctor. *Id.* On February 3, 1975, the doctor diagnosed her as having an allergy to the chemical substances with which she worked. *Id.* He gave her some medication and sent her back to work with instructions to avoid chemicals, fumes, and solvents. *Id.* Smith returned with a report from the doctor which included his diagnosis. *Id.* In this case, Smith's symptoms began in 1974, and she reported her disease on February 3, 1975. Despite this time frame, the court held Smith gave her employer notice within thirty days of the first distinct manifestation of her disease. *Id.* at 665.

Federated claims *Smith* can be distinguished because she sought to determine the cause of her injury within three months of when her symptoms began and Butler waited two years. We hold this is not a basis for distinction. First, the evidence does not conclusively establish that Butler suffered the injury two years before she gave notice. Second, Federated is essentially urging the first symptom theory we rejected in *Smith*.

In the second *occupational disease* case, Rowan began suffering with a skin condition in December 1968, and she filed her claim on March 23, 1971, more than two years later. *Rowan*, 499 S.W.2d at 338. Rowan testified she did not know what caused her skin problem and there was no evidence she knew her condition was job connected until February 1971. *Id.* at 340–41. The court held, "It is not realistic to assume from the record that she should have known something which her doctors did not ascertain for two years." *Id.* at 341.

Like Smith and Rowan, Butler suffered from a gradually developing condition; and like Rowan, she did not know what caused her problems until her doctor told her. Unlike *Leathers*, there was no triggering event here to make Butler's failure to question the cause of her disease earlier unreasonable. In addition, the cause of Butler's disease was hard to determine because her illness is common to aging individuals and its source is

usually genetic and not environmental. Further, the evidence shows Butler's supervisor was in a similar position to Butler herself, as far as knowledge and ability to perceive her illness were concerned. Butler's supervisor testified he had no cause to question the origin of Butler's disease; yet, Federated claims Butler should have. It seems Federated is seeking to hold Butler to a higher standard than that of the reasonable person. Finally, it is unrealistic to assume that Butler should have known something which her doctors did not.

Considering the uncontested facts and the case law, we hold Federated did not prove Butler failed to comply with the notice provision of article 8307, section 4a, because a fact issue existed as to when a reasonable person in similar circumstances would have recognized the work-related nature of the disease.

Next, we consider whether Federated proved that Butler failed to file her claim in a timely manner. Regarding this issue, article 8307, section 4a provides, in part:

> Unless the Association or subscriber have notice of the injury, no proceeding for compensation for injury under this law shall be maintained ... unless a claim for compensation with respect to such injury shall have been made within one (1) year after the occurrence of the injury or of the first distinct manifestation of an occupational disease.... For good cause the Board may, in meritorious cases, waive the strict compliance with the foregoing limitations as to notice....

TEX.REV. CIV.STAT.ANN. art. 8307, § 4a (Vernon Supp. Pamph.1994).

Because we hold there was a fact issue concerning when the first distinct manifestation of an occupational disease occurred, there was a fact issue as to whether Butler filed her claim within one year of that event. Butler's points of error are sustained.

Having found the two grounds relied upon by the trial court in entering its judgment are not supportive thereof, we now consider whether we should affirm the judgment on Federated's remaining grounds.

Citing *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374 (Tex.1993), Federated claims, "A majority of the Supreme Court has recently *decided* that a summary judgment may be affirmed on a ground not stated in a trial court's order...." [Emphasis added.] Although the five concurring and dissenting justices indicated a willingness to consider alternate grounds in the appropriate case, the plurality, in reversing the summary judgment, *held* the court's practice of declining to consider alternate grounds for summary judgment when the trial court specifically rules on a different ground continues to be the most judicious procedure. *Id.* at 381. Consequently, the concurring and dissenting statements are dicta only, and Federated is mistaken in claiming they establish the current law. *See id.*

The trial court's judgment is reversed, the case is remanded to the trial court for trial, and costs of appeal are assessed against appellee.