The AETNA CASUALTY AND SURETY
COMPANY, Appellant,

v.

William D. LUKER, Sr., Appellee.

No. 989.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

June 26, 1974.

Rehearing Denied July 17, 1974.

Thomas P. Sartwelle, Fulbright & Crooker, Houston, for appellant.

Marlin Thompson, Stephenson & Thompson, Orange, Harry Burns, Houston, for appellee.

CURTISS BROWN, Justice.

This is a workmen's compensation case.

Appellant, The Aetna Casualty and Surety Company, brought this suit against appellee William D. Luker, Sr., and against diagnostic Clinic of Houston, Diagnostic Center Hospital, and Dr. E. L. Slataper, M.D., and Associates, and Surgical Associates, to set aside an award of the Industrial Accident Board for total and permanent disability and for medical expenses. Defendants Luker and Diagnostic Clinic filed answers and cross-petitions. The other defendants. failed to appear or answer and default judgments were taken against them by Aetna, thereby setting aside the award of the Industrial Accident Board as to them. After trial to a jury on special issues, all relief sought was granted in the judgment for cross-plaintiff Luker. All relief was denied Diagnostic Clinic, which has not appealed. Aetna appeals from the judgment for Luker.

Appellee Luker worked for many years as an installer of asbestos insulation. As early as 1969 he consulted a doctor concerning vague complaints as to his chest. X-rays revealed no abnormalities. In January 1971 he went to Diagnostic Clinic with complaints of soreness and pain in his back and knees. In the course of filling out the Clinic's extensive medical history he also disclosed symptoms such as tiring easily, shortness of breath, and chest pains, all of which indicated to the examining physician, Dr. Lummis, that Luker should be referred to a specialist in lung and chest disease. Luker then consulted with Dr. Joel Reed, a lung specialist with the Clinic. His tests and x-rays indicated a lung problem. Dr. Reed's tentative diagno-

sis at that time was that Mr. Luker had asbestosis. Nevertheless, he did not tell Mr. Luker this. Rather he requested that Luker undergo a biopsy so that he could make a definite diagnosis. In Dr. Reed's opinion, the diagnosis of asbestosis could not be made without the biopsy and study of lung tissue.

Luker preferred to have the biopsy in June or July when he expected his union to be on strike. He, in fact, underwent surgery on July 7, 1971, and Dr. Reed informed him of the diagnosis of asbestosis on July 8 or 9. Luker called E. O. Greiner, an agent of his most recent employer, within a week or two to give notice of his asbestosis. It is not disputed that Luker's employer had notice within thirty days of July 7, 1971. On August 11, 1971, Luker filed his claim for compensation with the Industrial Accident Board. (This was prior to the effective date of the 1971 amendments to the Workmen's Compensation Law, Tex.Laws 1971, ch. 834, sec. 1, at p. 2539.) Luker went back to work from October 26, 1971, to January 19, 1972, but was unable to work after that except for a few scattered weeks during 1972.

The nature of Luker's job caused him to work for a number of different employers during his working years. He would be assigned through his union to various jobs ranging from one-half day to several months duration. His compensation claim was based on his most recent employment, with appellant's insured, Keene Insulation Contracting Division. Luker's first employment with Keene was from April 27, 1970, to October 31, 1970. In January 1971, when he went to the Diagnostic Clinic, he was working for another employer. He went back to work for Keene from May 26, 1971, to June 30, 1971, the day before the strike. This was his last employment before surgery on July 7, 1971.

The jury found that Luker was totally and permanently disabled by asbestosis and that the reasonable charges for his necessary medical treatment within ninety-one days of his incapacity (July 7, 1971) were $1669.90. It found that his last injurious exposure to the dangers of asbestosis was during his employment with Keene from May 26, 1971, to June 30, 1971, and that his exposure prior to May 26, 1971, was not the sole cause of his asbestosis. It also found that Luker knew or should have known that he had the first distinct manifestation of asbestosis in July 1971 and that Keene had notice of his asbestosis within thirty days from that date.

Appellant makes a full evidentiary attack on the finding of last injurious exposure. Because of the nature of occupational diseases, like asbestosis, which are caused by exposure to producing hazards over a long period of time, the Workmen's Compensation Law provides that the employer in whose employ the employee was last injuriously exposed to the hazards of the disease shall be considered the employer under the provisions of the act. Vernon's Tex.Rev.Civ.Stat.Ann. art. 8306, sec. 24 (1967). The Texas Supreme Court considered the proof necessary to establish injurious exposure in Texas Employers' Insurance Ass'n v. Etheredge, 154 Tex. 1, 272 S.W.2d 869 (1954). In that case, which involved silicosis, the proof offered was the testimony of the employee and his medical expert. The Court concluded that "injurious exposure under Sec. 24 may be established by . . . lay evidence of substantial amounts of silica dust plus medical opinion connecting it with actual injury." The Court expressly rejected the approach that scientific proof of harmful concentrations of silica dust in the air was necessary.

In the present case, Luker described the conditions on several jobs during his employment with Keene. On one job, Luker was not allowed to use fans, and he described the resulting unusual heat and extremely high dust levels. The testimony of Dr. Reed was that the lung tissue has an adverse reaction to each particle of asbes-

tos dust inhaled. Eventually scar tissue forms, impairing the ability of the lungs to transfer oxygen to the blood. It would seem to follow that each additional exposure to high concentrations of dust would have a cumulative effect and would be injurious. In addition, Dr. Reed testified that had he been sure of his diagnosis in January 1971 he would have advised Luker to stop working with asbestos insulation. A valid inference may be drawn that further exposure would be damaging. We hold that this evidence was sufficient to sustain the jury's finding.

■ Appellant also claims that Luker's exposure prior to May 26, 1971, was the sole cause of his asbestosis. We feel that it is a sufficient answer to this contention to point out that a claimant can recover under our Workmen's Compensation Law even when disease or injury aggravates or contributes to preexisting disability. The evidence here was sufficient to sustain the conclusion that Luker's exposure from May 26, 1971, to June 30, 1971, aggravated and contributed to the severity of his disease.

■ Appellant's second major attack is against the finding of the jury that Luker knew of the first distinct manifestation of asbestosis in July 1971. Tex.Rev.Civ.Stat. Ann. art. 8307, sec. 4a (1967), provides that no compensation for occupational disease shall be paid unless the insurer or the employer is given notice within thirty days and a claim is filed within six months of the first distinct manifestation of the disease. Appellant argues that Luker's time for giving notice should have run from Juanuary 1971 when he went to Diagnostic Clinic.

■ Appellant notes that the only Texas judicial interpretation of "first distinct manifestation" is in Travelers Insurance Company v. Miller, 390 S.W.2d 284 (Tex.Civ.App.—El Paso 1965, no writ). We have been unable to find any additional authority. In the Miller case, the employee's disability was the result of an occupational respiratory disease caused by poisoning by petroleum products. The question on appeal was whether the employer had been given the required notice within thirty days. In interpreting the statute, the court considered the meaning of "first distinct manifestation," noting the absence of interpretation in the statute or reported cases. The court concluded as follows:

> It is for the jury to determine under the facts peculiar to each case as to when the disease reached the stage where it manifested itself so that claimant knew, or should have known, that he had an occupational disease. Some jurisdictions start the time rumming when disability occurs, others when diagnosis is made, and such other fixed times; but our legislature has seen fit to provide a more flexible standard . . . . We think that the statute means that the manifestation must be distinct to the claimant, reasonably sufficient to cause him to believe that he has an occupational disease.

We agree that the quotation set out above correctly interprets the statute. We hold that this is a jury question and that the jury's response was supported by the evidence. Dr. Reed testified that he probably never told Luker of his preliminary diagnosis. Luker testified that he knew nothing about asbestosis and did not suspect that he had it until Dr. Reed disclosed this following the biopsy in July 1971. Further, when Luker went to the Diagnostic Clinic in January 1971, he went not because of respiratory complaints, but because of pains in his back and joints.

■ Appellant next complains that the trial court erred in refusing to admit into evidence certain admissions. In response to requests for admissions addressed to Diagnostic Clinic it was admitted that a diagnosis of asbestosis was made in January of

1971. Diagnostic Clinic was a defendant and cross-plaintiff, so such admissions were admissible against it. Diagnostic Clinic did not appear at trial, and, when appellant offered the admissions, counsel for Luker withdrew Diagnostic Clinic's bill. Appellant argued that appellee's counsel did not have the right to do so. If there was any error in permitting the withdrawal and refusing to admit the admissions, it was harmless as to appellant. Texas Rules of Civil Procedure, rule 434. The admissions could have been used only against Diagnostic Clinic, and Diagnostic Clinic received no judgment against appellant and has not appealed.

Appellant's final contention arises from the default judgments taken against three of the defendants. Luker's recovery of $1669.90 for necessary medical expenses was the exact total of the medical bills he owed those three defendants. Appellant argues that its appeal of the award of the Industrial Accident Board voided the awards to those three defendants. It is argued the default judgments would, therefore, completely foreclose their right to recover. This is true; however, it does not prevent Luker from recovering medical expenses incident to his claim. Maryland Casualty Co. v. Hendrick Memorial Hospital, 141 Tex. 23, 169 S.W.2d 969 (Tex. Com.App.1943, opinion adopted); Maryland Casualty Co. v. Moore, 129 Tex. 174, 102 S.W.2d 1118 (Tex.Com.App. 1937, opinion adopted), affirming 74 S.W. 2d 769 (Tex.Civ.App.—San Antonio, 1937). An employee may even claim incidental medical expenses in district court when no claim was made for them before the Industrial Accident Board. Standard Fire Insurance Company v. Simon, 474 S.W.2d 530 (Tex.Civ.App.—Dallas 1971, no writ). The trial court did not err in allowing Luker to recover medical expenses other than those amounts owed to Diagnostic Clinic.

All of appellant's points have been considered and are overruled.

Affirmed.