**Manuel S. HERNANDEZ, Appellant,**

v.

**The TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND, Appellee.**

**No. 08–92–00303–CV.**

Court of Appeals of Texas, El Paso.

April 28, 1993.

## OPINION

KOEHLER, Justice.

This appeal from a summary judgment raises the question of which of two workers' compensation carriers for the same employer is liable where the employee's first distinct manifestations of an occupational disease occurred during the policy period of one carrier but he was last exposed to the injurious chemical substance during the policy period of a second carrier. When the trial court granted the motion for summary judgment of the first carrier, it had the effect of making the carrier at the time of the last exposure liable. We reverse.

## RELEVANT FACTS

Manuel S. Hernandez (Hernandez), Appellant, began working for Stewart & Stevenson Service, Inc. (Stewart) in 1980. Stewart was in the business of rebuilding diesel engines and from 1980 until 1985, Hernandez was responsible for cleaning up spilled diesel fuel and oil. In 1985, Hernandez began painting engines in addition to his cleaning responsibilities. On April 17, 1988, Hernandez went to a doctor complaining about shortness of breath and congestion. His condition was diagnosed as asthmatic bronchitis and allergic rhinitis. On July 25, 1989, Hernandez was terminated by Stewart.

Hernandez filed a claim for workers' compensation benefits in October 1990. Travelers Indemnity Company (Travelers) was Stewart's compensation carrier from February 1987 until February 1989. National Union Fire Insurance Company (National Union) was Stewart's carrier from February 1989 until February 1990. Following the decision of the Industrial Accident Board, Hernandez filed separate suits against Travelers and National Union. In the instant case, Travelers, in its answer, denied liability on the ground that it was not the compensation carrier on the date that Hernandez was last injuriously exposed to the hazards of his alleged occupational disease. The trial court granted Travelers' subsequent motion for summary judgment. This appeal ensued, Hernandez

Ruff Ahders, Ruff Ahders, Associated, Odessa, Larry Zinn, San Antonio, for appellant.

John A. 'Jad' Davis, Patrick S. Gerald, Kemp, Smith, Duncan & Hammond, Midland, for appellee.

Before KOEHLER, BARAJAS and LARSEN, JJ.

claiming in a single point that the trial court erred by granting the latter motion.

## STANDARD OF REVIEW

Because there are no factual disputes in this case, the standard of review on the appeal of the summary judgment is simply whether the evidence offered by the movant, Travelers, in support of its motion, established its right to judgment as a matter of law. *Teer v. Duddlesten*, 664 S.W.2d 702, 703 (Tex.1984); *McNamara v. Freedom Newspapers, Inc.*, 802 S.W.2d 901, 903 (Tex.App.—Corpus Christi 1991, writ denied).

## WHICH COMPENSATION CARRIER IS LIABLE?

■ Travelers argues that the question of liability under the Workers' Compensation Act then in effect[1] is resolved by first determining the claimant's employer at the time the claimant was last injuriously exposed to the hazards that caused the disease. Specifically, Travelers relies on the language of Article 8306, Section 24:[2]

Where compensation is payable for an occupational disease, the employer in whose employ the employee was last injuriously exposed to the hazards of such disease shall be deemed the employer within the meaning of the Act.

Thus, Travelers contends that since Hernandez was exposed to the chemicals up until the date of his termination, the date of last exposure was July 25, 1989. Hence, Travelers would not be liable since it was not the carrier on that date. Travelers, however, cites no case to support its contention that Section 24 is applicable where there is a single employer and successive

1. Hernandez' claim arose before January 1, 1991 and is therefore governed by the Texas Workers' Compensation Act then in effect, published in Tex.Rev.Civ.Stat.Ann. arts. 8306–8309 (Vernon 1967 and Supp.1990).

2. Tex.Rev.Civ.Stat.Ann. art. 8306, § 24 (Vernon 1967).

3. Tex.Rev.Civ.Stat.Ann. art 8307, § 4a (Vernon Supp.1990).
   **Notice of injury; claim for compensation**
   Sec. 4a. Unless the Association or subscriber have notice of injury, no proceeding

carriers. Section 24 has only been applied to situations where there is a dispute as to which one of several possible employers is *the employer* for purposes of the Workers' Compensation Act. See *Texas Employers' Insurance Association v. Etheredge*, 272 S.W.2d 869, 873 (Tex.1954); *Smith v. Otis Engineering Corporation*, 670 S.W.2d 750, 751 (Tex.App.—Houston [1st Dist.] 1984, no writ); *Aetna Casualty and Surety Company v. Luker*, 511 S.W.2d 587, 590 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.).

■ Moreover, Travelers' interpretation of the law directly conflicts with the rule that a workers' compensation claim, based on an alleged occupational disease, accrues at the time of its first distinct manifestation.[3] It is at that time that the limitations periods begin to run for both notice of injury and claim for compensation and at the expirations of which periods the claim is barred unless good cause is shown for the delay. *Commercial Insurance Company of Newark, New Jersey v. Smith*, 596 S.W.2d 661 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.); *Travelers Insurance Company v. Miller*, 390 S.W.2d 284 (Tex.Civ.App.—El Paso 1965, no writ). In the latter case, the Court stated:

A distinct manifestation of an occupational disease, therefore, denotes that its existence is clearly evident. It should be clear to the claimant before the loss of his right to compensation is denied for failure by him, or someone in his behalf, to take positive action within the period of time prescribed. We think that the statute means that the manifestation must be distinct to the claimant, reason-

for compensation for injury under this law shall be maintained unless a notice of the injury shall be given to the Association or subscriber within thirty (30) days after the happening of an injury or the *first distinct manifestation of an occupational disease,* and unless a claim for compensation with respect to such injury shall have been made within one (1) year after the occurrence of the injury or of the *first distinct manifestation of an occupational disease;* .... [Emphasis added].

ably sufficient to cause him to believe that he has an occupational disease. 390 S.W.2d at 288.

Travelers argues with much logic and force, using a hypothetical of an employee who works for the same employer for thirty years and who experiences the first manifestation of an occupational disease after ten years but continues to work for another twenty years before filing a compensation claim, that the carrier at the time of first manifestation might be insolvent or records might be lost or destroyed with the possible result that the employee might not be able to receive compensation benefits.

■ Travelers' argument tends to ignore the foregoing definition of "first distinct manifestation of an occupational disease" and the thirty day notice and one year claim requirements of Article 8307, Section 4a. If the evidence shows when the first distinct manifestation of the occupational disease occurred, that date determines the identity of the employer and the carrier. If the claimant fails to give timely notice of injury and/or to make timely claim for compensation, he must show good cause for such failure in order to maintain his claim for compensation. On the other hand, if the claimant has worked for several employers over a period of time in which he has been exposed to similar causes of the occupational disease but a distinct manifestation of the disease has not previously occurred, then Article 8306, Section 24 tells us that his employer for purposes of the Workers' Compensation Act will be deemed to be that employer in whose employ he was last injuriously exposed to the causes of the disease. This interpretation of the two sections gives full effect to both and is wholly consistent with Justice Garwood's opinion in *Etheredge,* which after all did not consider Article 8307, Section 4a. 272 S.W.2d at 873. It is also consistent with *Luker,* which found, after quoting with approval the definition of "first distinct manifestation" from *Miller,* 390 S.W.2d at 288, that the claimant's first distinct manifestation of the disease occurred, i.e. when the manifestation was reasonably sufficient to cause him to believe that he had

the disease, during the period of employment when he was last injuriously exposed to the cause of the disease. 511 S.W.2d at 589–90.

In conclusion, we hold that where an employee who has worked for the same employer makes a claim for workers' compensation benefits due to an occupational disease, the compensation carrier at the time of the first distinct manifestation of the disease is liable for such benefits. Hernandez' point of error is sustained. The summary judgment of the trial court is reversed and the cause remanded for trial on the merits.

LARSEN, Justice, concurring.

I concur with the majority, but write to add an additional compelling reason the time of an employee's "first distinct manifestation" of occupational disease should control carrier liability. If we held that the last injurious exposure controlled, it would create a situation where carriers could avoid liability for occupational disease by simply cancelling worker's compensation coverage while workers remained exposed to an injurious substance. If a carrier learns early of a disease common to an industry, it could thus avoid paying the majority of claims for that disease. This situation could have disastrous effects in industries where occupational diseases have a lengthy onset, for example those where workers develop asbestosis and silicosis after many years of exposure. The majority opinion is in harmony with the general rule, frequently recited, that the Worker's Compensation Act should be liberally construed in the worker's favor. Attaching carrier liability to the first distinct manifestation of an occupational disease is not only compatible with the general law in this area, it also avoids the potential for a carrier's escape from liability by canceling coverage in a workplace where the potential for numerous occupational disease claims exist. For this reason, as well as those cited in the majority opinion, I concur.