**TEXAS EMPLOYERS' INSURANCE ASSOCIATION, Appellant,**

v.

**Aubrey L. WALKER, Appellee.**

**No. 15784.**

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 25, 1957.

Rehearing Denied Feb. 22, 1957.

Nelson & Sherrod and Eugene Sherrod, Jr., Wichita Falls, for appellant.

Mock & Spell and Kenneth C. Spell, Jr., Wichita Falls, for appellee.

BOYD, Justice.

Appellee Aubrey L. Walker recovered judgment against appellant Texas Employers' Insurance Association for compensation for total and permanent disability under the Workmen's Compensation Act.

Appellant challenges the judgment under two points of error, namely, that the court erred in submitting a special issue inquiring whether appellee gave notice of injury to "driller Roberts," over appellant's objection that the issue did not limit the inquiry to notice to appellant or to a duly authorized agent of the employer; and that it was error to refuse appellant's requested issues which inquired whether appellee's present

incapacity was not caused partially by his own conduct in failing to resume some light duties as prescribed by Dr. McDonald.

■ The issue submitted as to notice was, "Do you find from a preponderance of the evidence that plaintiff Walker reported his injury, if any, occurring on or about June 16, 1955, to the driller Roberts, within thirty days from the date of such injury, if any?" The answer was "Yes."

Roberts was appellee's father-in-law. He was the driller on the oil well where appellee was employed as a roughneck. As the driller, he was the supervisor of the crew. Roberts had authority to hire the employees. He hired appellee. Appellee was working in Roberts' crew on June 16, 1955, when his injury is alleged to have occurred. While he and Bernard, another employee, were lifting an overshot, appellee claims to have hurt his back, which is the injury involved. He finished the day's work, however, and did not mention the fact of the injury until he reached his home in the afternoon. He rode to his home with Roberts, in Roberts' car. Bernard was with them. Roberts testified that when they reached appellee's home, appellee "said to Bud Bernard, he said: 'Bud, I believe you are going to have to help me out of the car,' * * * I asked him, I said: 'Arb, what's the matter,' and he said: 'I hurt my back today lifting that overshot.'" Bernard testified that appellee's statement to him was, "'You may have to help me to the door,'" and that Roberts asked appellee what was wrong, and appellee said he hurt his back. Both Roberts and appellee's wife testified that she told Roberts the next morning that appellee was not able to work. Roberts testified that on the afternoon of June 17 he saw appellee and talked to him about his injuries, and advised him to see a doctor. There is no contention that notice was waived.

Appellant's objections to the notice issue were long, but we do not think they lacked definiteness or clarity. They were, in substance, that: Roberts had relationship of capacities with both appellee and appellant; the circumstances surrounding the notice to Roberts were questionable and suspicious; Roberts was impeached in a number of instances with reference to the report of the accident; appellee could have reported the incident to Roberts in the capacity of son-in-law to father-in-law, they being off the job and in front of appellee's residence when the notice was given; the information was not communicated by Roberts or by the employer to appellant within thirty days; the notice was peculiarly in the nature of a father-in-law and son-in-law family discussion; such report was unfair to appellant by reason of the relationship of the parties; the inquiry should determine whether appellee reported the matter to an agent, servant or employee of his employer who was acting in the capacity of a foreman or other agent recognized by law as being able to receive such notice, and as to whether or not the father-in-law of appellee got notice or whether he gave notice to Mr. Christopher, the employer; that appellee's wife repeatedly visited in the home of her father and discussed the matter with her family, which was a family discussion and not an official report, and was not communicated to the employer or to appellant; and that appellant was entitled to have the question of the capacity of the driller determined as to the time he received the report.

We do not perceive any vice in the notice issue. It is undisputed that Roberts was the employer's driller on the job where appellee was working when he was injured; three witnesses, including Roberts, testified that appellee told Roberts of the injury on the day it occurred; it is conceded by appellant that appellee's wife discussed the matter with Roberts. The fact that Roberts was appellee's father-in-law is insufficient, we think, to raise an issue as to whether he was acting as appellee's agent and not as the agent of the employer when he received the notice. It was not appellee's burden to show

that the driller notified the employer or appellant within thirty days. Texas Employers' Ins. Ass'n v. Bradshaw, Tex.Civ.App., 27 S.W.2d 314; Texas Indemnity Ins. Co. v. Arant, Tex.Civ.App., 171 S.W.2d 915; 71 C.J., p. 979, sec. 764.

Roberts testified that he thought he made an entry of the accident in the drilling log, which went to the employer's office. No such entry was found in the log. He signed a report of injury on August 9, which was given to the employer. The log showed that appellee worked on June 17, but Roberts said he was not paid for that day, or for the 18th, although his name had been put in the log for the 18th, but had been erased.

If the evidence should warrant an inference that Roberts failed in his duty to his employer, there was no evidence that appellee was privy to the fault. Moreover, there was no exception to the charge because no other issue as to notice was given, and no other such issue was requested. We think this case is distinguishable from First Texas Joint Stock Land Bank v. Chapman, Tex.Civ.App., 48 S.W.2d 651; and Ackerson v. Farm & Home Savings & Loan Ass'n, Tex.Civ.App., 77 S.W.2d 559, cited by appellant. The first point is overruled.

Appellant alleged: "If plaintiff has any disability remaining now it is either solely or partially caused by plaintiff's own voluntary conduct in failing and refusing to attempt to heal himself through application, proper exercise and some sort of work, though advised and requested to do so by Dr. McDonald, the treating doctor, and defendant here now requests that plaintiff follow the advice of Dr. McDonald with reference to self application and exercise."

The issues requested by appellant were: "Do you find from a preponderance of the evidence that plaintiff's present incapacity, if any, is not caused partially by his own conduct in failing to resume some light duties as prescribed by Dr. McDonald?" and "If you have answered the foregoing Issue 'No', then answer what do you find from a preponderance of the evidence to be the percentage such conduct inquired about in the foregoing Issue is contributing to plaintiff's incapacity, if any?" Appellant invokes Article 8307, Sec. 4, and Article 8306, Sec. 12a, Vernon's Ann.Civ.Tex.St.

Article 8307, Sec. 4, provides that " * * If any employee shall persist in insanitary or injurious practices which tend to either imperil or retard his recovery, or shall refuse to submit to such medical or surgical treatment, chiropractic service or other remedial treatment recognized by the State, as is reasonably essential to promote his recovery, the board may in its discretion order or direct the association to reduce or suspend the compensation of any such injured employee. No compensation shall be reduced or suspended under the terms of this Section without reasonable notice to the employee and an opportunity to be heard."

Article 8306, Sec. 12a, provides that "If the injured employe refuses employment reasonably suited to his incapacity and physical condition, procured for him in the locality where injured or at a place agreeable to him, he shall not be entitled to compensation during the period of such refusal, unless in opinion of the board such refusal is justifiable. * * *"

■ The insurance carrier may urge as a defensive issue the fact that an employee has persisted in practices which tend to imperil or retard his recovery, or refused treatment reasonably essential to promote recovery. Goff v. Texas Employers' Insurance Association, Tex. Civ.App., 278 S.W.2d 326; Texas Employers' Insurance Association v. Roberts, Tex.Civ.App., 281 S.W.2d 104.

■ Dr. McDonald testified that: he first saw appellee on August 31, 1955; he performed an operation on appellee's spine on September 23, 1955; when appellee was released from the hospital on October 4, 1955, he requested that appellee walk increasing lengths of time daily and at least one mile per day by the time the Doctor should see him again; he next saw appellee

on November 14, 1955, and appellee was then walking two or more miles each day; he recommended that appellee continue the walking; "We told him that he could not bend or lift, that he could squat to get down to pick up something, but no bending or lifting;" he last saw appellee on January 23, 1956; he then asked appellee to return in three months, which the witness said would have been "approximately the latter part of March;" after his last examination of appellee he thought office work, which he did not think appellee was trained to carry out, "would be very well tolerated in all probability by this patient. Anything manual or physical would not, in our past experience with cases of this type."

We do not find any evidence that appellee failed "to resume some light duties as prescribed by Doctor McDonald," or that Dr. McDonald prescribed anything which appellee failed to do. In addition to saying that he was to see appellee three months after January 23, 1956, which the Doctor calculated would be the latter part of March, he did say that he expected to see appellee approximately six months after the operation, which would have been approximately March 23. The trial begain on April 2, 1956. We do not speculate on what the Doctor might have prescribed had appellee seen him again; nor does it appear that appellee's failure to see the Doctor again before the trial is covered by appellant's requested issues.

Although we do not think appellant's requested issues covered the point, it insists that appellee "had refused to work for Mr. Davis at a job for which he was capable," and that the refusal of its requested issues denied its defense under Article 8306, Sec. 12a. Appellee had worked some for Davis after June 16 and before he was hospitalized, but we are unable to find any evidence to the effect that Davis offered appellee any job after the operation. Appellant's second point is overruled.

Finding no reversible error, the judgment is affirmed.