Karen K. SAFFORD, Appellant,

v.

CIGNA INSURANCE COMPANY
OF TEXAS, Appellee.

No. 2–97–385–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 25, 1998.

Rehearing Overruled Jan. 14, 1999.

Norman Darwin & Associates, Norman Darwin, Fort Worth, for Appellant.

Chappell & McGartland, L.L.P., Carolyn Mitchell, Fort Worth, for Appellee.

Before DAY, DAUPHINOT and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

Appellant Karen K. Safford appeals the trial court's decision granting summary judgment in favor of Appellee Cigna Insurance in her workers' compensation case. In three points, Appellant claims the trial court erred because there are fact issues precluding summary judgment. We sustain her points because there are issues of fact concerning whether she gave timely notice of her occupational disease to her employer.

The summary judgment is reversed and the case is remanded for trial.

### BACKGROUND

Appellant was an aircraft assembler for Lockheed, formerly General Dynamics, beginning in 1981. In 1985, she received medical treatment for two work-related injuries: a crushed thumb, and a crushed right hand.

In 1987, she suffered a thoracic strain from lifting heavy tools, and was treated by doctors for that injury. In 1991, she had surgeries for carpal tunnel syndrome and related repetitive movement injuries.

Appellant was a heavy smoker for 23 years, and she has a family history of asthma. She had pneumonia on four separate occasions, twice as a child. She had probable exposure to histoplasmosis.[1] In the course of her employment, she was exposed to chemicals, solvents, cleaners, and dust.[2] In 1991, she noticed that she kept having problems breathing. She saw her family doctor, who referred her to a pulmonary specialist in March 1991. The specialist, Dr. David Ostransky, testified that at that time he did not have all the information necessary to make a diagnosis, but based on the information he did have, his impression was that Appellant suffered from asthmatic bronchitis and "possible industrial bronchitis." Based on Appellant's history and the initial examination, Ostransky was unable to determine the cause of her bronchitis, but he advised her that it could be due to hereditary asthma, cigarette smoking, urban pollution, or industrial exposures. He prescribed a course of treatment and saw her again between one and three times until he felt like her condition had stabilized. Appellant quit smoking in either February or May of 1993.

In May 1993, Appellant again began experiencing breathing difficulties, so she saw her family doctor, who gave her breathing treatments and took her off work. He referred her again to Ostransky, and on July 26, 1993, Appellant saw Ostransky for these symptoms.[3] Ostransky's diagnoses included asthmatic bronchitis, industrial bronchitis, and a history of smoking. He discussed with Appellant what he thought were some "tentative causes of her symptoms," based in part on the material safety data sheets[4] that she

1. Histoplasmosis is a fungal lung disease or infection that can be difficult to diagnose.

2. In 1991, Appellant was assigned to clean up in preparation for an upcoming review of her employer by a government organization, resulting in a marked increase in her dust exposure. She also had exposure to numerous chemicals at work, including a solvent used to clean seals. Workers who use this substance must use special gloves and take certain precautions for disposal. She was exposed also to acids, metal primers, polysulphide sealants, and substances containing hydrocarbons and flurocarbons.

3. It is unclear from the record whether July 15 or July 26 was the date of her first appointment with Ostransky in 1993.

4. Material safety data "MSD" sheets are profiles outlining the toxicities of the chemicals that Appellant was exposed to at work.

provided him, and also in light of the fact that she had recently quit smoking. Appellant testified that at that time she was unsure from her discussion with Ostransky whether her breathing problems were related to the chemicals. Ostransky asked Appellant to obtain additional MSD sheets and ordered several tests,[5] which were performed between July and October of 1993. When Appellant obtained the MSD sheets from her employer, she told one of her supervisors that her doctor had asked for them in order to determine what was causing her lung problems. Appellant had office visits with Ostransky every week or every other week as needed during this period.

On August 16, 1993, Ostransky's diagnoses were chronic bronchitis and asthmatic bronchitis.[6] During office visits on September 9 and 27, Ostransky noted that Appellant's symptoms had improved. But on September 9 he scheduled Appellant for a cardiopulmonary stress test[7] because her symptoms had not been resolved. This test was performed on September 15. Ostransky advised Appellant on September 27 not to return to work for another two weeks and ordered another lung function test. At this time, Ostransky concluded that Appellant's workplace exposures were more of a contribution to her airways disease than he had thought previously. He communicated this diagnosis to Appellant in early November.

Also in early November, Ostransky confirmed his findings to Dr. Jack Judson, the plant physician at Lockheed. On November 3 Ostransky wrote a letter for Appellant indicating that she was being treated for work-related asthmatic bronchitis. Appellant notified her employer of the confirmed diagnosis on November 11, 1993. Appellant filed her Notice of Occupational Disease and Claim for Compensation on December 2, 1993.

A contested hearing was held on January 19, 1996 before a hearing officer for the Texas Workers' Compensation Commission. Two of the issues were whether Appellant gave timely notice of her occupational disease to her employer, and, if not, whether she had good cause for untimely notice. The hearing officer found that July 15, 1993 was the date Appellant knew, or should have known, that her disease may be related to her employment. Appellant appealed this decision to an appeals panel, which affirmed on March 25, 1996. Appellant then appealed to the 67th District Court. Appellee filed a motion for summary judgment, raising the defense that Appellant did not notify her employer of her occupational disease within 30 days of the time that she knew or should have known her condition may be related to her employment. The trial court granted summary judgment, from which Appellant takes this appeal.

## STANDARD OF REVIEW

In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c); *Calvillo v. Gonzalez*, 922 S.W.2d 928, 929 (Tex.1996); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant. *See Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex.1996); *Cate v. Dover Corp.*, 790 S.W.2d 559, 562 (Tex.1990); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am.*, 391 S.W.2d at 47. We apply the same standards of review to appeals from workers' compensation panel decisions as we do to appeals in other civil cases. *Cf. Gardner v. U.S. Fideli-*

---

5. The tests included blood, lung function, sinus, and allergy tests.

6. These conditions may be distinguished in that chronic bronchitis is related to smoking, whereas asthmatic bronchitis relates to heredity and environmental exposures.

7. This test was performed to assist in confirming or ruling out a diagnosis. Ostransky wanted to rule out cardiac disease.

*ty & Guaranty Co.,* 574 S.W.2d 636, 638 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.); *Lyles v. Texas Emp. Ins. Ass'n,* 365 S.W.2d 819, 824 (Tex.Civ.App.—Texarkana 1963, writ ref'd n.r.e.).

■ A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *See Friendswood Dev. Co.,* 926 S.W.2d at 282. To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

### TIMELY NOTICE

Summary judgment was proper here if Appellee proved as a matter of law that Appellant failed to fulfill the notice-of-injury requirements of section 409.001 of the Texas Workers' Compensation Act (the Act). *See Anderson v. Hood Co.,* 958 S.W.2d 448, 450 (Tex.App.—Fort Worth 1997, no writ). Our inquiry is whether Appellant timely gave Lockheed notice of her occupational disease. Appellant contends that she received the first definitive diagnosis that her lung disease *was* work-related on November 3, 1993, and that her November 11 notice was timely. Appellee contends that Appellant knew her disease *may be* related to her employment by July 1993, and possibly as early as March 1991.

■ Section 409.001 states:

(a) An employee or a person acting on the employee's behalf shall notify the employer of the employee of an injury not later than the 30 th day after the date on which:

. . . .

(2) if the injury is an occupational disease, the employee knew or should have known that the injury *may be* related to employment.

8. Appeals courts are *obliged* to consider these factors. *See Cole v. Texas Employment Comm'n,* 563 S.W.2d 363, 367 (Tex.Civ.App.—Fort Worth 1978, writ dism'd) (emphasis added).

9. The employee's injury in that case was an occupational disease resulting from repetitious physical traumatic activity. *See id.* at 530.

See TEX. LAB.CODE ANN. § 409.001(a) (Vernon 1996) (emphasis added). Failure to give notice relieves the employer and its insurance carrier of liability unless the employer has actual notice of the injury or the commission determines that good cause exists for failure to give timely notice. *See* TEX. LAB. CODE ANN. § 409.002 (Vernon 1996). Construction of these notice provisions is critical to our inquiry.

In construing a statute, and regardless of whether the statute is ambiguous on its face, courts may consider,[8] among other matters, the object sought to be attained, the common law, including laws on the same or similar subjects, and the consequences of a particular construction. *See* TEX. GOV'T.CODE ANN. § 311.023 (Vernon 1998). We will examine these matters in turn as they pertain to the 30–day notice requirement.

■ The purpose, or the object sought to be attained by the notice provision is to give the insurer an opportunity immediately to investigate the facts surrounding an injury. *See DeAnda v. Home Ins. Co.,* 618 S.W.2d 529, 532 (Tex.1980) (reviewing the purpose of the 30–day notice provision of an earlier version of the Act). The *DeAnda* court, in examining whether evidence was legally sufficient to support a jury finding of notice, construed the notice provision and noted that its purpose is fulfilled when the employer has knowledge of (1) the general nature of the injury,[9] and (2) the *fact that it is* job related. *See DeAnda,* 618 S.W.2d at 533 (emphasis added).

Considering next laws on the same or similar subjects, we note that an earlier version of the Act provided that notice be given the employer within 30 days after the "first distinct manifestation" of an occupational disease.[10] Apparently, "first distinct manifestation" was not yet defined by any Texas court. *See Travelers Ins. Co. v. Miller,* 390 S.W.2d

10. *See* Act of May 28, 1983, 68 th Leg., R.S., ch. 498, § 1, 1983 Tex. Gen. Laws 2921, 2921, *amended by* Act of Dec. 11, 1989, 71 st Leg., 2 nd C.S., ch. 1, § 5.01(a), 1989 Tex. Gen. Laws 48, 49 (current version at TEX. LAB.CODE ANN. § 409.001(a)(2) (Vernon 1996)).

284, 288 (Tex.Civ.App.—El Paso 1965, no writ). However, the court stated that "it is for the jury to determine under the facts peculiar to each case as to when the disease reached the stage where it manifested itself so that claimant knew, or should have known, that he had an occupational disease." *See id.*

Turning to the common law, the Texas Supreme Court has recently applied the discovery rule in the latent occupational disease context. *See Childs v. Haussecker,* 974 S.W.2d 31, 33 (Tex.1998). There the court found that the purposes served by a strict application of statutes of limitations are not betrayed by deferring accrual in latent disease cases until an innocent and diligent plaintiff discovers his or her injury and its *likely* cause. *See id.* at 38.(emphasis added). In applying a "judicially-crafted exception" to the general rule of accrual, the court noted several reasons why cases involving latent injuries or diseases sometimes merit application of the discovery rule. *See id.* at 36–37. Latent diseases are often inherently undiscoverable within the applicable limitations period. *See id.* at 38. Unlike other injury cases, a person suffering from a latent disease or injury typically does not immediately know about the injury or its cause because often it does not manifest itself for long periods following exposure to the hazardous substance. *See id.* Even when symptoms do arise, the injury and its etiology are hard to diagnose because of the many potential causes. *See id.*

Although we are mindful that the rule[11] recently announced in *Childs* involved application of the discovery rule in tort cases, the reasoning there is applicable in the context that we face today. The value of requiring that an employee give notice within a fixed period of time or forfeit her coverage may be outweighed in certain latent injury or disease cases by the inequity of depriving a reasonably diligent plaintiff an opportunity to seek redress at all. *See id.* at 39.

Finally, we must also consider the consequences of construing the 30–day notice provision as Appellee urges. In traumatic injury cases, an employee often will immediately recognize the cause of the injury. *See id.* at 38. Thus, the point in time that the employee first knows of the injury's cause is more often definite and certain. This makes compliance with the 30–day notice requirement less onerous. Furthermore, the employer's actual knowledge that an employee suffered an injury will often supplant the need for notice.[12] *See* TEX. LAB.CODE ANN. § 409.002(1) (Vernon 1996); *see generally U.S. Fire Ins. Co. v. Ramos,* 863 S.W.2d 534, 538 (Tex.App.—El Paso 1993, writ denied); *Belknap v. Texas Employers' Ins. Ass'n,* 556 S.W.2d 587, 588 (Tex.Civ.App.—Dallas 1977, no writ); *Twin City Fire Ins. Co. v. Gibson,* 488 S.W.2d 565, 573 (Tex.Civ.App.—Amarillo 1972, writ ref'd n.r.e.). But as we have already noted, in the latent disease context it is more difficult to determine when a person obtains knowledge of the disease's cause; thus, compliance with the notice requirement is more precarious.

If the point in time that a person knows the cause of her latent injury or disease is difficult to determine, the point when she knows that it *may be related* to employment is even more so. But the statute provides that notice must be given to the employer no later than 30 days after the date the employee "knew or should have known that the injury *may be related* to the employment." *See* TEX. LAB.CODE ANN. § 409.001(a)(2) (emphasis added). In the latent disease or injury context, a narrow reading would force occupationally-exposed employees to file anticipatory claims prematurely in order to remain protected under the statute.

█ Considering the purpose of the statute, the common law and earlier versions of the act, and possible interpretations, we hold that in the context of latent diseases or inju-

---

11. In latent occupational disease cases, a cause of action accrues whenever a plaintiff's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that he or she suffers from some injury, and he or she knows, or in the exercise of reasonable diligence should have known, that the injury *is likely* work-related. *See id.* at 33 (emphasis added).

12. Because Appellant has not raised this issue, we express no opinion about the question of whether her employer had actual knowledge of her disease prior to November 11, 1993.

ries, the 30–day notice period begins to run whenever an employee's symptoms manifest themselves to a degree or for a duration that would put a reasonable person on notice that she suffers from some injury and she knows, or in the exercise of reasonable diligence should have known, that the injury is likely work-related. We believe this approach is necessary in this context to ensure that the notice rule is applied in a way that is fair to both employees and employers, and promotes the efficient use of judicial resources. *See Childs,* 974 S.W.2d at 40.

Applying this rule to the facts, we will sustain summary judgment if Appellee proved, as a matter of law, that Appellant knew or should have known through the exercise of reasonable diligence about her injury and that it was likely work-related more than thirty days prior to her November 11, 1993 notice.

■ The discovery directed to Appellant was framed in order to ascertain the point in time that Appellant knew her injury *may* be related to her work environment. For example, Appellee's request for admission number one asked Appellant to admit: "Plaintiff knew or should have known, as a reasonably prudent person, that her condition *might* be related to her work on or before March 20, 1991." [Emphasis added.] Interrogatory number 16, directed to Appellant, asked: "On what date did you suspect that your complaints ... *might* be related to your work?" [Emphasis added.] Furthermore, Appellee's motion for summary judgment alleged that the Appellant knew or should have known on July 15, 1993 that her condition *may* be related to her employment. On the other hand, Appellant's discovery was framed to determine the facts that Appellee contended enabled Appellant to know "that her occupational disease *was caused* by her workplace environment." [Emphasis added.] Because the discovery requests were couched upon incorrect interpretations of the law, and because we find, based on the summary judgment evidence, that a fact question remains as to whether Appellant knew or should have known through the exercise of reasonable diligence that her injury was like-ly work-related more than 30 days prior to November 11, we sustain points one and two.

## Good Cause

Appellant contends in point three that:

The trial court erred by granting summary judgment for the appellee for the reason that there was good cause for any failure to report her occupational disease to her employer within 30 days of the time that she knew that her occupational disease was work related and such issue should be submitted to the trier of fact.

But her brief contains only the following additional statement with regard to this point: "If her caution in asserting such a claim is to be held to her detriment, then surely the reason for her failure to notify her employer should be considered sufficient to submit the issue of 'good cause' to the jury."

Rule 38 of the Texas Rules of Appellate Procedure requires that the Appellant's brief must contain a succinct, clear, and accurate statement of the arguments in the body of the brief, and a clear and concise argument with citations to authorities and to the record. *See* TEX.R.APP. P. 38.1(g),(h). Because Appellant's brief on this point does not comply, we overrule point three.

## Conclusion

Having sustained Appellant's first and second points, and overruled point three, we reverse the summary judgment of the trial court and remand the cause for trial.